Joyce E. Hertz CRAFT, Plaintiff
and Respondent,

v.

Theodore Wilmer HERTZ, Defendant
and Appellant.

Civ. No. 8622.

Supreme Court of North Dakota.

Dec. 23, 1970.

Floyd B. Sperry, Bismarck, for defendant and appellant.

Dale Jensen, State's Atty., and Dennis Schneider, Asst. State's Atty., Burleigh County, Bismarck, for plaintiff and respondent.

PAULSON, Judge.

This is an appeal from an order of the District Court of Burleigh County, North Dakota, dated October 17, 1969, in favor of the plaintiff, Joyce E. Craft (formerly Joyce E. Hertz), and against the defendant, Theodore Wilmer Hertz, providing for support payments in the sum of $200 per month to be paid by Mr. Hertz to the Clerk of the District Court of Burleigh County, North Dakota, for transmittal to the Clerk of the Superior Court of Maricopa County, Arizona. The origin of this case is based on a divorce decree obtained in the Superior Court of the State of Arizona, in and for the county of Maricopa, on April 4, 1967, by which Mrs. Hertz and Mr. Hertz were divorced. In the divorce decree, Mrs. Hertz was awarded the custody of the four minor children of the parties, and the decree approved, ratified, confirmed, and adopted a settlement agreement entered into by the parties on March 2, 1967. The pertinent part of the settlement agreement provides:

"Insofar as the parties hereto have the right and authority, they agree that the wife shall have the custody, care, and control of CANDYCE HERTZ, age eight (8) years; CHRISTOPHER HERTZ, age five (5) years; CEVIN HERTZ, age two (2) years; and CINDY KIM HERTZ, age nine (9) years, the minor children of the parties hereto, with the husband to have the right to visit said children at all reasonable times and places, and the husband to have the right to temporary custody of said children for a reasonable vacation period during the summer school vacation months, with the husband to pay any transportation costs incident to such visitation.

"The husband shall pay to the wife the sum of Fifty ($50.00) Dollars on or before the 3rd day of each month for the support of each of the aforementioned children, commencing on April 3, 1967, and continuing thereafter, so long as the wife has the care, custody, and control of the said children until they reach their twenty-first birthday or are sooner married, self-supporting, or deceased, with said monthly child support payments tb be made through the office of the Clerk of the Superior Court of Maricopa County, Arizona, or by military allotment."

Mr. Hertz made the required payments of $200 per month for a period of approximately one year after the entry of the divorce decree. Mr. Hertz, at that time, reduced the payments to $50 per month, which was the amount of his dependency allotment. Mr. Hertz alleged that after he was transferred to Bismarck, North Dakota, by his employer, the United States Air Force, his former wife no longer permitted him visitation privileges with their children. He stated that this was true, even though he had made necessary travel arrangements, at his expense, to enable his children to fly by commercial airline from Arizona to North Dakota to visit him during the summer of 1968. However, no arrangements were made for an adult custodian to care for the children other than for supervision which might be furnished by the airline's personnel.

Mrs. Craft, in February of 1969, filed a verified petition for child support with the Clerk of the Superior Court of Maricopa County, Arizona, pursuant to the provisions of the Arizona Uniform Recipro-

cal Enforcement of Support Act. The petition and the required certified support forms were later forwarded to the Clerk of the District Court of Burleigh County, North Dakota, where Mr. Hertz was and is a resident. Mr. Hertz was served, on September 23, 1969, with an order to show cause to appear in the District Court of Burleigh County, North Dakota, for a hearing on Mrs. Craft's petition, to determine whether he should have the continuing duty to support their children. Mr. Hertz served his return to the order to show cause and answer, in which he alleged that Mrs. Craft violated his rights of visitation, which are set forth in the property settlement agreement and decree; and he further alleged that he is unable to pay the amount requested for child support. A hearing was held on the above proceeding on October 13, 1969, in the District Court of Burleigh County. The District Court, in its memorandum opinion, found that Mr. Hertz was capable of making the child support payments, and an order was executed on October 17, 1969, by the court, directing Mr. Hertz to make the prescribed payments forthwith. Mr. Hertz personally admitted service on the original order on October 23, 1969. He undertook an appeal to this Court in December of 1969 and demanded a trial de novo in this forum, pursuant to § 28–27–32 of the North Dakota Century Code.

Mr. Hertz's demand for a trial de novo is improper, because he has appealed from an order. The statute authorizing trials anew in this Court applies only to judgments. § 28–27–32, N.D.C.C.; Guldeman v. Heller, 151 N.W.2d 436 (N.D.1967); Dale v. Duffy, 44 N.D. 33, 176 N.W. 97 (1919).

In March of 1970, Mrs. Craft served and filed a motion to strike Mr. Hertz's brief and to disallow costs, on the ground that his brief failed to discuss adequately the relevant law. The determination of the applicable law in the case at bar will be considered by the Court in analyzing the merits of the case. The motion filed by Mrs. Craft before this Court to strike Mr. Hertz's brief and to disallow costs is denied because the motion is without merit.

The pertinent issues are whether Mr. Hertz has a continuing duty of child support because of the alleged refusal of his former wife to allow visitation privileges with their children, and whether the responding court, under the North Dakota Revised Uniform Reciprocal Enforcement of Support Act (1968), had sufficient evidence before it to make the decision it rendered.

The relevant statutes, under the North Dakota Revised Uniform Reciprocal Enforcement of Support Act (1968), Chapter 14–12.1, N.D.C.C., are:

"14–12.1–02. *Definitions.*—

\*    \*    \*    \*    \*    \*

"14. 'Support order' means any judgment, decree, or order of support in favor of an obligee whether temporary or final, or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered.

"14–12.1–07. *Choice of law.*—Duties of support applicable under this chapter are those imposed under the laws of any state where the obligor was present for the period during which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

"14–12.1–20. *Hearing and continuance.*—If the obligee is not present at the hearing and the obligor denies owing the duty of support alleged in the petition or offers evidence constituting a defense, the court, upon request of either party, shall continue the hearing to permit evidence relative to the duty to be adduced by either party by deposition or by appearing in person before the court. The court may designate the

judge of the initiating court as a person before whom a deposition may be taken.

"14–12.1–23. *Rules of evidence.*—In any hearing for the civil enforcement of this chapter the court is governed by the rules of evidence applicable in a civil court action in the district court. If the action is based on a support order issued by another court a certified copy of the order shall be received as evidence of the duty of support, subject only to any defenses available to an obligor with respect to paternity (section 14–12.1–27) or to a defendant in an action or a proceeding to enforce a foreign money judgment. The determination or enforcement of a duty of support owed to one obligee is unaffected by an interference by another obligee with rights of custody or visitation granted by a court.

"14–12.1–24. *Order of support.*—If the responding court finds a duty of support it may order the obligor to furnish support or reimbursement therefor and subject the property of the obligor to the order. Support orders made pursuant to this chapter shall require that payments be made to the clerk of the court of the responding state. The court and prosecuting attorney of any county in which the obligor is present or has property have the same powers and duties to enforce the order as have those of the county in which it was first issued. If enforcement is impossible or cannot be completed in the county in which the order was issued, the prosecuting attorney shall send a certified copy of the order to the prosecuting attorney of any county in which it appears that proceedings to enforce the order would be effective. The prosecuting attorney to whom the certified copy of the order is forwarded shall proceed with enforcement and report the results of the proceedings to the court first issuing the order.

"14–12.1–32. *Effect of participation in proceeding.*—Participation in any proceeding under this chapter does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding.

"14–12.1–41. *Uniformity of interpretation.*—This chapter shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

Mr. Hertz urges that insufficient evidence, if any, was submitted on behalf of Mrs. Craft. A certified copy of the Arizona divorce decree and property settlement agreement appears in the judgment roll as a part of Mrs. Craft's petition. The Honorable Clifford Jansonius, Judge of the District Court of Burleigh County, North Dakota, took judicial notice of the divorce decree and property settlement agreement and, in fact, incorporated pertinent parts of the decree in his memorandum opinion. §§ 14–12.1–23, 31–10–03, 31–10–04, N.D.C.C.

■ Neither party, pursuant to § 14–12.- 1–20, N.D.C.C., requested the court to continue the hearing in order to secure evidence, relative to the duty of support, to be adduced by either party, by deposition, with interrogatories, or by appearing in person before the court. Mr. Hertz did not request a continuance for the purpose of offering further evidence with reference to the alleged termination of his visitation rights. Where the record fails to show in the instant case that the father exercised these rights, he cannot be heard to complain of the failure of the court to grant a continuance. Allain v. Allain, 24 Ill.App.2d 400, 164 N.E.2d 611 (1960).

Mr. Hertz further contends that visitation rights are a concomitant of the support proceeding and may properly be taken into consideration in determining the amount of support.

■ The primary purpose of the Uniform Reciprocal Enforcement of Support Act is to facilitate an effective and supplemental method of determining and collect-

ing support for the minor children of divorced parents. 23 Am.Jur.2d, Desertion and Nonsupport §§ 125–161, pp. 1000–1017; 42 A.L.R.2d 768–795. In Lambrou v. Berna, 154 Me. 352, 148 A.2d 697, 700 (1959), the court stated:

"The law is remedial in nature and is to be construed liberally with reference to the object to be obtained, and every endeavor should be made by the courts to render the act operable."

 The denial of visitation rights as a ground for suspension of support payments has been, to this date, an undecided question in North Dakota with reference to the North Dakota Revised Uniform Reciprocal Enforcement of Support Act (1968). The concluding sentence of § 14–12.1–23, N.D. C.C., of the North Dakota Revised Uniform Reciprocal Enforcement of Support Act (1968), states:

" * * * The determination or enforcement of a duty of support owed to one obligee is unaffected by an interference by another obligee with rights of custody or visitation granted by a court."

Thus, in the instant case, Mr. Hertz is clearly prohibited from asserting as a defense to his duty of support to his children by his first marriage, the denial of visitation by another obligee, that is, Mrs. Craft. The trial court did not err in holding that the defense of denial of visitation was not available in the case at bar.

▮ The only question remaining is whether the amount of the monthly payment set by the District Court of Burleigh County, North Dakota, was excessive. In the instant case, North Dakota is the responding state, and, as such, the Civil Enforcement provisions of Part 3 of Chapter 14–12.1, N.D.C.C., the North Dakota Revised Uniform Reciprocal Enforcement of Support Act (1968), require that North Dakota give full credit to the foreign decree. Thus the responding state has no alternative but to find a duty of the obligor to furnish support in the amount provided by the foreign decree. Furthermore, Mrs. Craft and Mr. Hertz were both residents of Arizona when they obtained their divorce. The decree also provided that Mr. Hertz was to make monthly support payments for their children and that Mrs. Craft was to have custody of them. In her endeavor to obtain support from Mr. Hertz, Mrs. Craft filed, among other papers, a certified copy of their divorce decree, under the Uniform Act, with the District Court of Burleigh County, North Dakota. This decree constitutes a support order within the purview of 14–12.1–02(14), N.D. C.C. Even though Mrs. Craft has participated in this proceeding in a North Dakota court, § 14–12.1–32, N.D.C.C., prohibits any court of this state, in an action under Chapter 14–12.1, from securing jurisdiction over Mrs. Craft. Therefore, North Dakota, acting as the responding state in these proceedings, has no jurisdiction to modify the Arizona divorce decree. For reasons stated in the opinion, the order of the Burleigh County District Court is affirmed.

TEIGEN, C. J., and STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.