**STATE OF MINNESOTA, COUNTY OF CLAY, on Behalf of Elizabeth A. LICHA, Appellee,**

**v.**

**Douglas L. DOTY, Appellant.**

**Civ. No. 10217.**

Supreme Court of North Dakota.

Nov. 10, 1982.

Garaas Law Firm, Fargo, for appellant; argued by Jonathan T. Garaas, Fargo.

Deborah A. Lewis, Asst. State's Atty., Fargo, for appellee.

PAULSON, Justice.

This is an appeal by the respondent, Douglas L. Doty, from an order of the District Court of Cass County dated March 23, 1982, affirming a referee's findings of fact and conclusions of law dated February 1, 1982, wherein Doty was ordered to make temporary child support payments of $75 per month for his minor child. We affirm.

On February 10, 1981, the Clay County Court in Minnesota determined that Doty was the father of Elizabeth A. Licha's minor child and ordered that he pay current child support in the sum of $125 per month and reimburse Clay County in the amount of $2,750 for past support expended by Clay County Social Services from January 1, 1979, to September 30, 1980. Licha resides in Moorhead, Minnesota, and Doty lives in West Fargo, North Dakota.

On June 9, 1981, Clay County Social Services filed a Uniform Reciprocal Enforcement of Support Act[1] petition, certificate, and order in Clay County Court, which was subsequently forwarded to the District Court of Cass County, North Dakota, for further action. The documents indicated that Doty had made no child support payments and that he was $3,500 in arrears in

his child support obligation through April 1981.

On July 23, 1981, a hearing was commenced before the referee of the District Court of Cass County. The referee found that Doty had a child support obligation in the amount of $125 per month and a child support arrearage of $3,875 through July 1981. In his findings of fact and conclusions of law dated August 6, 1981, the referee also found, in Finding of Fact V which was incorporated by reference into his conclusions of law (and later into the order of the court) as follows:

"That the Respondent acknowledges the foregoing obligation both current and arrearages;

"*that this hearing shall be continued to the 21st day of January, 1982, at 9:00 A.M.;*

"that in the interim, the Respondent shall make child support payments to the limit of his financial ability;

"that if in the interim, there is any significant change in the Respondent's employment or financial circumstances, he will immediately so notify Miss Lewis of the Cass County State's Attorneys Office;

"that at the continued hearing, the Respondent will produce in written form a record of his income and expenses for the preceding Six (6) months." [Emphasis in original.]

At the second hearing, held on January 21, 1982, Licha was present but was not called upon to testify. The referee issued his findings of fact and conclusions of law on February 1, 1982. He noted that Doty had never made a payment on his child support obligation, and the referee found that although

"it is obvious that the Respondent's income is more than accounted for in providing basic subsistence for his wife and two (2) sons at home; this does not, however, provide the Respondent with a legally-sufficient reason for not supporting his third (3rd) child, simply because that

1. The Minnesota Reciprocal Enforcement of Support Act is found in Minn.Stat. §§ 518.41– 518.53 (1980).

child does not reside in the Respondent's household."

The referee proceeded to reduce temporarily the rate of enforcement of Doty's child support obligation from $125 to $75 per month.

On February 10, 1982, Doty requested the District Court of Cass County to review the referee's findings of fact and conclusions of law. The district court issued its order of confirmation on review on March 23, 1982, thereby approving the referee's findings of fact and conclusions of law.

Doty appeals from the district court's order of confirmation on review and contends that the district court's order "cannot be supported by the evidence nor law". More specifically, Doty's arguments may be summarized as follows: (1) that the district court erred in affirming the referee's order temporarily enforcing Doty's child support obligation in the sum of $75 per month because the assistant state's attorney of Cass County did not present any evidence to support a finding of the present needs and circumstances of the petitioner; and, (2) that the district court's affirmance of the referee's finding of Doty's present ability to pay is clearly erroneous because the referee also found that Doty's income is "more than accounted for in providing basic subsistence" for his wife and two sons at home.

I

■ Chapter 14–12.1 of the North Dakota Century Code [Revised Uniform Reciprocal Enforcement of Support Act (RURESA)] governs this type of proceeding. Doty's argument is premised on § 14–12.1–24 thereof which provides, in relevant part:

"*14–12.1–24. Order of support.* If the responding court finds a duty of support it may order the obligor to furnish support or reimbursement therefor *in accordance with the present needs and circumstances of the obligee and the present ability of the obligor to pay* and subject the property of the obligor to the order. The court, upon a finding of a material change in circumstances relative to the obligor's discharge of obligations under any existing order for child support or decree of divorce, may modify the order for child support or alimony combined with child support, and order the obligor to furnish support or reimbursement therefor and subject the property of the obligor to the order. . . ." [Emphasis added.]

Doty contends that because the Cass County assistant state's attorney offered "no evidence" of the present needs and circumstances of the obligee,[2] the assistant state's

---

**2.** Doty also raises the question whether or not evidence pertaining to the needs and circumstances of Clay County, Minnesota, or evidence pertaining to the needs and circumstances of Elizabeth A. Licha and her child, was required to be presented in the Cass County proceedings. He argues that Clay County, and not Licha and her child, is the actual "obligee" in this case. Licha had assigned her right to child support to the State of Minnesota in order to be eligible for Aid for Dependent Children benefits. Section 14–12.1–02(6), N.D.C.C., defines "obligee" as:

"6. . . . a person including a state or political subdivision to whom a duty of support is owed or a person including a state or political subdivision that has commenced a proceeding for enforcement of an alleged duty of support or for registration of a support order. It is immaterial if the person to whom a duty of support is owed is a recipient of public assistance."

Section 14–12.1–08, N.D.C.C., provides:

"*14–12.1–08. Remedies of state or political subdivision furnishing support.* If a state or a political subdivision furnishes support to an individual obligee it has the same right to initiate a proceeding under this chapter as the individual obligee for the purpose of securing reimbursement for support furnished and of obtaining continuing support."

Although Elizabeth Licha and her minor child technically are not parties to the instant proceeding, *see Rolette County v. Eltobgi,* 221 N.W.2d 645, 647 (N.D.1974), we find this fact to be of little consequence. Whether or not the technical "obligee" in any given RURESA action is the actual person to whom a duty of support is owed, or a state or political subdivision which has expended benefits for support of the child, the actual underlying "obligee" is always the *person* to whom the duty of support is owed.

For the State of Minnesota to have a remedy under the Uniform Reciprocal Enforcement of Support Act, there must be an underlying imposed, or imposable, duty of support. That the

attorney failed to establish a *prima facie* case and, thus, the district court erred in temporarily enforcing Doty's child support obligation in the amount of $75 per month.

We disagree. This court has stated in *Craft v. Hertz,* 182 N.W.2d 293, 297 (N.D. 1970) [quoting *Lambrou v. Berna,* 154 Me. 352, 148 A.2d 697, 700 (1959)] that RURESA

" '. . . is remedial in nature and is to be construed liberally with reference to the object to be obtained, and every endeavor should be made by the courts to render the act operable.' "

In *O'Halloran v. O'Halloran,* 580 S.W.2d 870, 871–872 (Tex.Civ.App.1979), the Texas Court of Civil Appeals stated:

"The purpose of the Uniform Reciprocal Enforcement of Support Act was to provide a simplified, consistent and effective mechanism for the interstate enforcement of support obligations. Conventional judicial proceedings had proved unsatisfactory, largely because the defaulting spouse-obligor was frequently outside the jurisdiction, and the obligee could rarely afford to travel to distant states and litigate the question of support obligations. See Annot., 42 A.L.R.2d 768; Fox, *The Uniform Reciprocal Enforcement of Support Act,* XII Family Law Quarterly 114 (1978). URESA was de-signed to avoid those disadvantages by allowing the obligation of support to be established in the obligee's home state, and then allow that right to be enforced in a foreign state by a simplified procedure without having to bring an independent action in the foreign state. Fox, supra, p. 114."

*See also* § 14–12.1–01, N.D.C.C.

The specific statutory language relied upon by Doty was added to § 14–12.1–24, N.D.C.C., by our Legislature in 1979. Ch. 197, 1979 S.L. However, we do not believe the Legislature by amending § 14–12.1–24 intended its action to detrimentally affect the underlying purposes of RURESA. *See* Minutes of the House Judiciary Committee, 46th Legislative Assembly, January 23, 1979 (H.B. 1184). Requiring an assistant state's attorney to introduce in a responding court[3] independent evidence of a child's "present needs and circumstances" in a RURESA proceeding would, in all practicality, render the Act inoperable because such a procedure would require, more often than not, that the obligee "travel to distant states and litigate the question of support obligations". *O'Halloran, supra* 580 S.W.2d at 871. This would be in direct contravention of the express purpose of RURESA.

We therefore hold that an initiating court's[4] certification of a Reciprocal En-

---

Act permits the State of Minnesota "to stand in petitioner's place to secure reimbursement and obtain further support does not enlarge the expressed purpose of URESA beyond the enforcement of existing obligations". *People ex rel. Oetjen v. Oetjen,* 92 Ill.App.3d 699, 48 Ill. Dec. 247, 253, 416 N.E.2d 278, 284 (1981).

Such an interpretation is both practically and logically sound. An approach which would require a court to focus on the financial status of a state or political subdivision would lead to ludicrous results. Under such an approach, a parent would never be responsible for his or her child support obligation if a state or political subdivision intervened, as they undoubtedly would, to provide the needed support before the child starved to death.

Thus, we believe that "present needs and circumstances of the obligee", as used in § 14–12.1–24, N.D.C.C., refers to the parent and child to whom a duty of support is owed, whether or not the petitioner in the RURESA proceedings is the actual person to whom a duty of support is owed, or a state or political subdivision which has expended benefits for the child's welfare and has been assigned that person's right to support.

3. Section 14–12.1–02(12), N.D.C.C., states:
   "*14–12.1–02. Definitions.*

   . . . . .

   "12. 'Responding state' means a state in which any responsive proceeding pursuant to the proceeding in the initiating state is commenced. 'Responding court' means the court in which the responsive proceeding is commenced."

4. Section 14–12.1–02(4), N.D.C.C., states:
   "*14–12.1–02. Definitions.*

   . . . . .

   "4. 'Initiating state' means a state in which a proceeding pursuant to this or a substantially similar reciprocal law is commenced. 'Initiating court' means the court in which a proceeding is commenced."

forcement of Support Act petition, which sets forth the needs of the child and the amount of that need, is to be considered *prima facie* evidence in the courts of North Dakota of the "present needs and circumstances of the obligee". We also note, however, that the initiating court's certification of need is not necessarily conclusive on the courts of this State. An obligor[5] may introduce evidence to rebut an initiating court's certification of need. If no such evidence is introduced, the initiating court's certification of need shall stand as sufficient to establish the "present needs and circumstances of the obligee".

Most courts which have addressed similar issues also appear to give *prima facie* effect to the initiating court's certification. *See Prager v. Smith,* 195 A.2d 257, 258 (D.C. 1963); *Clark v. Clark,* 139 So.2d 195, 197 (Fla.Dist.Ct.App.1962); *Martin v. Coffey,* 83 Mich.App. 113, 268 N.W.2d 307, 308 (1978); *Barringer v. Barringer,* 24 N.C.App. 142, 210 S.E.2d 90 (1974); *State ex rel. Fulton v. Fulton,* 31 Or.App. 669, 571 P.2d 179, 180 (1977). *Cf. Kline v. Kline,* 260 Ark. 550, 542 S.W.2d 499, 500 (1976); *Harris v. Kinard,* 443 A.2d 25, 26–27 (D.C.App.1982). *But see O'Hara v. Floyd,* 47 Ala.App. 619, 259 So.2d 673, 675 (1972); *Neff v. Johnson,* 391 S.W.2d 760, 764 (Tex.Civ.App.1965).

In the instant case, the initiating court certified the child's support needs to be $125 per month based on the findings and order of the Clay County Court dated February 10, 1981. The certified petition also states that "Elizabeth Licha has neither funds nor assets of any kind or character for support of her dependents ...". As we have stated, this was sufficient to establish a *prima facie* showing of the "present needs and circumstances of the obligee".

▇ Although a petitioner would not normally be present at a responding court proceeding in a RURESA action, because of her nearby residence, Licha was present at the hearing. If Doty doubted that his son's present needs and circumstances required

support from him in the amount of $125 per month, he could have called Licha to the stand to testify. Doty presented *no* evidence to rebut the initiating court's certification of need. Indeed, the referee's findings of fact and conclusions of law dated August 6, 1981, indicated that Doty acknowledged both his past and current child support obligations. We believe that by agreeing to the amount of arrearages, as well as the amount of current support due, Doty recognized that Licha had the present needs and circumstances to require monetary assistance with regard to the support of their minor child. Thus, the "present needs and circumstances of the obligee" were sufficiently established in accordance with § 14–12.1–24, N.D.C.C.

## II

Doty also contends that the district court's affirmance of the referee's finding of his "present ability to pay" is clearly erroneous because the referee also found that his income is "more than accounted for in providing basic subsistence" for his wife and two sons at home.

▇ In *State of Oregon ex rel. Krueger v. Krueger,* 292 N.W.2d 60, 61 (N.D.1980), we stated:

"The district court's determination on the matter of child support is treated as a finding of fact and will not be set aside by this court on appeal unless it is clearly erroneous under Rule 52(a) of the North Dakota Rules of Civil Procedure. *Kostelecky v. Kostelecky,* 251 N.W.2d 400 (N.D. 1977). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Kostelecky, supra ....*"

We have reviewed the entire record in this case and are not left with a definite and firm conviction that a mistake has been made.

---

**5.** "Obligor" is defined in § 14–12.1–02(7), N.D.C.C., as "any person owning [*sic*] a duty of support or against whom a proceeding for the enforcement of a duty of support or registration of a support order is commenced".

In *State of Oregon ex rel. Krueger v. Krueger, supra* 292 N.W.2d 60, we reversed a trial court's determination that the father did not have the financial ability to pay any support whatsoever for his minor child. Because the father's monthly expenses totaled less than his monthly income, and because a substantial portion of his monthly expenses was directed toward his purchase of a new van, we found the district court's order to be clearly erroneous. Ruling that the factors listed in § 14–17–14(5), N.D. C.C.,[6] of the Uniform Parentage Act, should be considered by a court in any proceeding to determine matters of child support, whether or not such proceeding is commenced under the Uniform Parentage Act, we stated in *State of Oregon ex rel. Krueger v. Krueger, supra* 292 N.W.2d at 62

"In its determination of child support, the trial court must attempt to strike a balance between the needs of the child and the ability of the father to pay. *Kostelecky v. Kostelecky,* 251 N.W.2d 400 (N.D.1977). Although the court should not impose a support obligation which the father cannot perform nor one which would burden him to the extent that all incentive is destroyed, *he should be required to support his child as best he can. Hoster v. Hoster,* 216 N.W.2d 698 (N.D. 1974)." [Emphasis added.]

In the instant case, the referee and the district court found that Doty is employed; that he has a net income of approximately $750 per month; and that he has received that income since September of 1981. It does not appear that the court made specific findings as to Doty's monthly expenses. The referee found, however, that Doty's income is "more than accounted for in pro-

viding basic subsistence" for his wife and two sons at home. We do not believe that a party's mere showing that expenses exceed income should automatically trigger the conclusion that the party is incapable of providing child support. *See Coble v. Coble,* 300 N.C. 708, 268 S.E.2d 185, 190 (1980). We find persuasive the following reasoning of the Court of Appeals of North Carolina, in County of *Stanislaus v. Ross,* 41 N.C.App. 518, 255 S.E.2d 229, 232 (1979) [in which the father argued that the trial court erred in concluding that he had sufficient earning capacity to enable him to pay support in the amount of $200 per month]:

"The defendant's evidence supported the trial court's findings that his income is $1,700 per month and his expenses are $1,710 per month. These facts as found by the trial court do not reveal that the defendant is unable to pay $200 per month in child support; they merely tend to show that he cannot pay $200 per month and continue to maintain his present life-style. The defendant's evidence indicated that his expenses included among other things $100 per month for clothing, $183 per month for car payments, $100 per month for truck payments, $100 per month for automobile expenses, $90 per month for payments on a loan, and $341 per month for payments on a mortgage. If by reason of the trial court's judgment the defendant is required to survive with less clothing, less convenient transportation or less desirable housing, then so be it. He may not avoid his duty to support his minor child simply by spending all of the money he earns. The defendant must share his earnings with his minor child to the end

---

**6.** Section 14–17–14(5), N.D.C.C., provides:

"*14–17–14. Judgment or order.*

"5. In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, a court enforcing the obligation of support shall consider all relevant facts, including:

a. The needs of the child.
b. The standard of living and circumstances of the parents.
c. The relative financial means of the parents.
d. The earning ability of the parents.
e. The need and capacity of the child for education, including higher education.
f. The age of the child.
g. The financial resources and the earning ability of the child.
h. The responsibility of the parents for the support of others.
i. The value of services contributed by the custodial parent.

that each may have a reasonable amount for support, with the minor child's reasonable needs for food, clothing and shelter taking priority."

The record in the instant case reveals that Doty is apparently making payments on several nonessential items, including a television set and a washer and a dryer. It also appears that he owes a jewelry store $1,800 for wedding rings. Automobile expenses total $90 per month. Yet, Doty has made no child support payments on behalf of his minor child. We quote with approval from the Minnesota Supreme Court, which stated, in *State v. Fuerst,* 283 Minn. 391, 168 N.W.2d 1, 2 (1969):

"The obligation of a father to support his progeny must take precedence over every consideration for himself not arising from the absolute necessities of self-sustenance."

In the instant case, the payments for nonessential items could well have been considered by the court as being subordinate in priority to Doty's obligation to support his child. Under these circumstances we cannot conclude that the court's order is clearly erroneous.

■ Doty also argues that the referee and the district court erred in "disregarding" other pertinent provisions of state law [7] relating to his obligation to support his wife and the two children with whom he currently resides. He urges that, in accordance with the law, all of his income is used to support his wife and the two children, one of whom requires frequent medical care. We agree that Doty's obligations to support others may be considered by a court in determining the amount to be paid by a parent for support of a child [*see* § 14–17–14(5)(h), N.D.C.C.], but we do not agree that such a consideration should shield Doty from his coexistent obligation to support his

nonresident minor child. This court has previously stated that a father's duty to support his children "is continuous and does not depend upon his prosperity nor upon his existent or nonexistent obligation to support his wife". *Kinsella v. Kinsella,* 181 N.W.2d 764, 769 (N.D.1970). Furthermore, Doty was well aware of Licha's child before taking on an additional financial burden by his marriage and the subsequent birth of his other two sons. Doty has voluntarily placed himself in this position by marrying and fathering the children, so he should not be able to use his current family as a legal excuse for not contributing to the support of his first-born child. *Bryant v. Bryant,* 102 N.W.2d 800, 807 (N.D.1960), *overruled on other grounds, DeForest v. DeForest,* 228 N.W.2d 919, 924 (N.D.1975).

In any event, it is evident that the court took into account Doty's present ability to pay because it temporarily reduced enforcement of his child support obligation from $125 to $75 per month. While this court may not be in total agreement with the conclusions of the lower court, the test is whether or not the lower court's determination is clearly erroneous. We conclude that the lower court's determination of Doty's child support obligation is not clearly erroneous.

Accordingly, the district court's order of confirmation on review is affirmed.

ERICKSTAD, C.J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring specially.

I concur in the results.

7. Doty points to the following statutory support obligations: § 14–07–01 [husband's obligation to support wife], § 14–07–03 [husband's duty to support himself and his wife], § 14–07–10 [husband liable for wife's necessaries], § 14–07–15 [penalty for nonsupport of child], § 14–07–16 [penalty for nonsupport of wife], § 14–08–01 [husband's duty to support wife and children], § 14–08–02 [power of court to enforce husband's duty to support wife and children], § 14–09–10 [father's duty to support mother and children], § 14–09–13 [parent's duty to provide articles necessary for child under his charge], and § 14–09–22 [penalty for parent's refusal to provide for child], N.D.C.C.