Kathryn T. COOGAN, formerly Kathryn T. Fennell, Plaintiff and Appellant,

v.

Preston N. FENNELL, Defendant and Appellee.

Civ. No. 11020.

Supreme Court of North Dakota.

Dec. 18, 1985.

Ella Van Berkom, Minot, for plaintiff and appellant.

Teevens, Johnson & Montgomery, Minot, for defendant and appellee; argued by Bruce R. Montgomery.

ERICKSTAD, Chief Justice.

Kathryn T. Coogan appeals from a district court judgment dismissing with prejudice her action for arrearages in child support payments against Preston N. Fennell. We reverse and remand for further proceedings.

On February 18, 1976, Kathryn and Preston were divorced in Ward County, North Dakota. That divorce judgment granted Kathryn custody of the couple's four minor children subject to visitation. The court ordered Preston to pay $200 per month child support for 48 months, and thereafter $130 per month until the youngest child reached her 18th birthday which was on March 13, 1984.

Kathryn subsequently moved to California and, when Preston did not make the child support payments required by the divorce judgment, she initiated proceedings under the Uniform Reciprocal Enforcement of Support Act (URESA) to enforce the judgment. Preston had moved to McHenry County, so the URESA proceeding was heard in the District Court of McHenry County in August 1980. After a hearing, the District Court of McHenry County entered an order dated August 29, 1980, which provided:

"1. That the Respondent's support payments of One Hundred Dollars ($100.00)[1] per month for the months of

---

1. Kathryn had also initiated URESA proceedings in 1978 and 1979. Hearings on those proceedings were heard in the District Court of McHenry County. The judgment roll in the instant case does not include the orders entered pursuant to those proceedings. However, Kathryn's appendix to this Court includes copies of those orders. An order dated March 1, 1978, provides, in part:

"1) That the defendant may purge himself from contempt by making payments of One Hundred ($100.00) Dollars per month towards the support payments of the children who are the subject matter of this proceeding under the Uniform Reciprocal Enforcement of Support Act, the first such payment to be

made to the clerk of court of McHenry County on the 15th day of March and an equal payment on the 15th of each month thereafter until April 1, 1979.

"2) That on April 1, 1979, the support payment as established by the divorce decree shall become effective unless in the interim appropriate proceedings are instituted in the court having jurisdiction over the divorce decree and a modification is ordered by that court reducing the support payments."

An order dated March 2, 1979, provides, in part:

"IT IS HEREBY the order of this court that the defendant shall be found in contempt of court and is sentenced to six months in the

June, July, and August in 1980 are forgiven.

"2. That no further monthly child support payments will be due to the McHenry County Clerk of Court as long as the two minor children are in the custody of the Respondent.

"3. That the Respondent pay Fifty Dollars ($50.00) per month per child in those months in which one or both of the minor children are in Petitioner's custody.

"4. That the Respondent make payments on the arrearage of Seven Hundred Dollars ($700.00) as follows:

(a) Twenty Dollars ($20.00) per month beginning September 15, 1980, and upon the 15th of each successive month so long as the Respondent is unemployed;

(b) One Hundred Dollars ($100.00) per month shall be due if the Respondent is employed and both minor children are in Respondent's custody;

(c) Fifty Dollars ($50.00) per month shall be due if one or both of the minor children are in the Petitioner's custody and the Respondent is employed.

"5. That every two (2) weeks the Respondent inform the McHenry County Clerk of Court as to his employment status and the custody of the minor children."

On August 30, 1982, Kathryn commenced the instant action in the District Court of Ward County to collect child support arrearages based on the amounts ordered in the February 18, 1976 divorce decree.[2] After a bench trial, the District Court of Ward County entered a judgment which provided, in pertinent part:

"IT IS ORDERED, ADJUDGED AND DECREED that the Ward County Court has jurisdiction over this matter and that

*the Order of August 29, 1980 by Judge Neumann, District Judge, McHenry County District Court did modify and/or amend the divorce judgment of the parties hereto in Ward County District Court,* Civil Number 41379, and that the McHenry County District Court had jurisdiction over the subject matter and the parties when it made its order of August 29, 1980, *and that order of the District Court in and for McHenry County was a valid order and stands as the controlling order in this matter.*

"The Three Hundred Dollars ($300.00) in accrued child support arrearages forgiven by the McHenry County Court Order will be included in any arrearage payments now owed by the Defendant.

"Except for the Three Hundred Dollars ($300.00) additional arrearage, this action against the Defendant is in all ways dismissed with prejudice." [Emphasis added.]

Kathryn contends that Preston is responsible for all the arrearages under the February 18, 1976 judgment because the District Court of McHenry County did not have jurisdiction to modify the divorce judgment of the District Court of Ward County. She asserts that only the District Court of Ward County could modify the child support payments and that, in an URESA proceeding, a person who is unable to pay the full amount due pursuant to a previous child support order can seek temporary relief from that order and receive. credit against the monthly payments accruing under the previous order. Thus, Kathryn contends that Preston still owes the difference between the original judgment and the temporary reduction.

In resolving these issues, we must consider the propriety of the August 29, 1980 order and its effect on the original judg-

County Jail. He shall be allowed to ... [purge] himself of contempt of court by making payments of $150.00 per month beginning April 15, 1979 and on the 15th day of every month thereafter ... [with] $100.00 of said payment being applied to the monthly payments ... [and] $50.00 to be applied to the arrearage. Said sum shall continue until the arrearage has been made up. Should the de-

fendant fail to make payments by the 15th day of every month, he shall report to the County Sheriff by the 15th of the month to begin serving sentence hereinabove set forth."

2. The complaint alleged arrearages in the amount of $9,770.00. At trial and on appeal to this Court, Kathryn contended that Preston was $7,440.00 in arrears on child support payments.

ment. That order was entered as a result of an URESA proceeding.

The purpose of URESA is to facilitate an effective and supplemental method of collecting child support for dependent children from persons legally responsible for their support. Section 14–12.1–01, N.D.C.C.; *Craft v. Hertz*, 182 N.W.2d 293 (N.D.1970). URESA proceedings are separate, independent proceedings to enforce support obligations, and the remedies provided under the Act are "in addition to and not in substitution for any other remedies." Section 14–12.1–03, N.D.C.C.; *see People ex rel. Oetjen v. Oetjen*, 92 Ill.App.3d 699, 48 Ill.Dec. 247, 416 N.E.2d 278 (1981); *Foster v. Marshman*, 96 Nev. 475, 611 P.2d 197 (1980); *Oglesby v. Oglesby*, 29 Utah 2d 419, 510 P.2d 1106 (1973).

Section 14–12.1–24, N.D.C.C., deals with orders of support in URESA proceedings and, as amended in 1979,[3] provides:

"14–12.1–24. ORDER OF SUPPORT. If the responding court finds a duty of support it may order the obligor to furnish support or reimbursement therefor

in accordance with the present needs and circumstances of the obligee and the present ability of the obligor to pay and subject the property of the obligor to the order. The court, upon a finding of a material change in circumstances relative to the obligor's discharge of obligations under any existing order for child support or decree of divorce, may modify the order for child support or alimony combined with child support, and order the obligor to furnish support or reimbursement therefor and subject the property of the obligor to the order. Support orders made pursuant to this chapter shall require that payments be made to the clerk of the court of the responding state. The court and prosecuting attorney of any county in which the obligor is present or has property have the same powers and duties to enforce the order as have those of the county in which it was first issued. If enforcement is impossible or cannot be completed in the county in which the order was issued, the prosecuting attorney shall send a certified

---

**3.** Before 1979, Section 14–12.1–24, N.D.C.C., was identical to the corresponding provision of URESA and provided as follows:

"*14–12.1–24.   Order of support.*— If the responding court finds a duty of support it may order the obligor to furnish support or reimbursement therefor and subject the property of the obligor to the order. Support orders made pursuant to this chapter shall require that payments be made to the clerk of the court of the responding state. The court and prosecuting attorney of any county in which the obligor is present or has property have the same powers and duties to enforce the order as have those of the county in which it was first issued. If enforcement is impossible or cannot be completed in the county in which the order was issued, the prosecuting attorney shall send a certified copy of the order to the prosecuting attorney of any county in which it appears that proceedings to enforce the order would be effective. The prosecuting attorney to whom the certified copy of the order is forwarded shall proceed with enforcement and report the results of the proceedings to the court first issuing the order." However, the 1979 Legislature amended that section and Sections 14–12.1–02(2) and 14–12.1–31, N.D.C.C. The 1979 amendment to Section 14–12.1–02(2), N.D.C.C., provides:

"2. 'Duty of support' means a duty of support whether imposed or imposable by law or by order, decree, or judgment of any court,

whether interlocutory or final or whether incidental to an action for divorce, separation, separate maintenance, or otherwise and includes the duty to pay arrearages of support past due and unpaid, said duty of support subject to modification under the provisions of this chapter upon a showing of material change in circumstances." [1979 amendment underscored.]

The 1979 amendment to Section 14–12.1–31, N.D.C.C., provides:

"14–12.1–31. APPLICATION OF PAYMENTS. A support order made by a court of this state pursuant to this chapter does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance or variation in amounts ordered to be paid, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state or by a court of this state pursuant to any other law shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state under this chapter." [1979 amendment underscored.]

copy of the order to the prosecuting attorney of any county in which it appears that proceedings to enforce the order would be effective. The prosecuting attorney to whom the certified copy of the order is forwarded shall proceed with enforcement and report the results of the proceedings to the court first issuing the order." [1979 amendment underscored.]

The legislative materials pertaining to the 1979 amendments reflect that those amendments were in response to North Dakota district court interpretations of language in *Craft v. Hertz, supra,* 182 N.W.2d at 297, in which this Court stated that a North Dakota court, as a responding court, had no alternative but to find a duty on the obligor to furnish support in the amount provided by a foreign decree. *See* Printed Testimony of Bill Schmidt before Senate Judiciary Committee, February 21, 1979, and House Judiciary Committee, January 23, 1979, at pp. 4–5. Based on our statement in *Craft, supra,* North Dakota district courts in URESA proceedings had been refusing to order the obligor to pay any amount different from the amount provided by a prior decree even if circumstances had changed substantially since the prior decree. *Id.* The legislative history evidences a clear intent that the purpose of the 1979 amendments was to permit responding courts in URESA proceedings to enter a child support order different in amount from a previous support order and to clarify and reaffirm the original intent of the Act and correct the interpretation of the law resulting from *Craft, supra. Id.* at page 7. The legislative history reflects that the 1979 amendment to Section 14–12.-1–24, N.D.C.C., was not intended to detri-

mentally affect the underlying purposes of URESA,[4] and that, before the 1979 amendments, URESA proceedings contemplated that "more than one order for child support payments [could] be in existence at one time and that those orders [could] be for different amounts." Testimony of Bill Schmidt at p. 4.[5]

■ We conclude that the 1979 amendments reaffirmed the original intent of URESA and gave the District Court of McHenry County the authority, under appropriate circumstances,[6] to enter an order for child support in an amount different from that provided in the original divorce judgment.

However, we must also consider the effect of the August 29, 1980 order on the divorce judgment. Section 14–12.1–31, N.D.C.C., provides as follows:

"*14–12.1–31. APPLICATION OF PAYMENTS. A support order made by a court of this state pursuant to this chapter does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance or variation in amounts ordered to be paid, unless otherwise specifically provided by the court.* Amounts paid for a particular period pursuant to any support order made by the court of another state or by a court of this state pursuant to any other law shall be credited against the amounts accruing or accrued for the same period under any support order

4. *State of Minnesota, County of Clay v. Doty,* 326 N.W.2d 74, 77 (N.D.1982).

5. Chapter 14–12.1, N.D.C.C., is a particular statute dealing with a particular subject whereas Sections 27–05–27, N.D.C.C., and 27–05–22, N.D.C.C., are general statutes dealing with a general subject. Section 1–02–07, N.D.C.C., provides that special provisions shall prevail over general provisions.

6. The responding court's support order must be "in accordance with the present needs and circumstances of the obligee and the present abili-

ty of the obligor to pay" and must be based "upon a finding of a material change in circumstances relative to the obligor's discharge of obligations under any existing order for child support ...." Section 14–12.1–24, N.D.C.C. If an URESA action is based upon a support order issued by another court, a certified copy of that order is evidence of the duty of support. Section 14–12.1–24, N.D.C.C. Additionally, the initiating court's certification of an URESA petition is prima facie evidence of the child's present needs and circumstances. *State of Minnesota, County of Clay v. Doty, supra.*

made by the court of this state under this chapter." [Emphasis added.]

This section contemplates that, in URESA proceedings, a support order entered by a responding court does not affect the parties' support obligations under any other support order for the same children unless the responding court specifically orders otherwise, and that any amount paid on the responding court's support order must be credited against any amount due on any other support order. *See People ex rel. Oetjen v. Oetjen, supra; Kansas State Dept. of Social and Rehabilitation Services v. Henderson,* 620 P.2d 60 (Col.Ct.App. 1980); *Foster v. Marshman, supra; Oglesby v. Oglesby, supra; Howard v. Howard,* 191 So.2d 528 (Miss.1966). This section recognizes that an order entered pursuant to an URESA proceeding is a new order and not a modification of a previous order, unless the responding court specifically provides that its order nullifies any other orders and that, in some situations, there may be more than one support order for the same obligor in existence at the same time. *See* Testimony of Bill Schmidt, *Id.* at pp. 4, 7.

■ In the instant case the August 29, 1980 order of the District Court of McHenry County did not specifically provide that it nullified the order for child support in the judgment of the District Court of Ward County. Consequently, the support order in the divorce decree was still in force and the August 29, 1980 order did not relieve Preston of his support obligation under that judgment. *See Campbell v. Jenne,* 172 Mont. 219, 563 P.2d 574 (1977); *Oglesby v. Oglesby, supra.* However, any payments made pursuant to the August 29, 1980 order must be credited against Preston's obligation under the February 18, 1976 judgment. Section 14–12.1–31, N.D. C.C.

We conclude that the district court erred in determining that the August 29, 1980 order of the District Court of McHenry County was the controlling order in this case and that it modified and amended the February 18, 1976 divorce judgment of the District Court of Ward County. Accordingly, we reverse the judgment dismissing

Kathryn's action and remand for a determination of the amount of arrearages.

■ In remanding to determine the amount of arrearages, we note that in URESA proceedings the duty of support "includes the duty to pay arrearages of support past due and unpaid" (Section 14–12.1–02(2), N.D.C.C.); that "[d]uties of support arising under the law of this state, when applicable under section 14–12.1–07, bind the obligor present in this state regardless of the presence of residence of the obligee" (Section 14–12.1–04, N.D.C.C.); that "[a]ll duties of support, including the duty to pay arrearages, are enforceable by a proceeding under [URESA]" (Section 14–12.1–09, N.D.C.C.); and that "[d]uties of support applicable under [URESA] are those imposed under the laws of any state where the obligor was present for the period during which support is sought." Section 14–12.1–07, N.D.C.C. We believe that these provisions support the principle that accrued, but unpaid child support payments cannot be nullified or modified by a responding court in an URESA proceeding just as they cannot be modified or cancelled by the court which granted the original divorce decree. See *Kinsella v. Kinsella,* 181 N.W.2d 764 (N.D.1970). Thus, the District Court of McHenry County, as a responding court in an URESA proceeding, could not have nullified accrued, but unpaid child support payments required under a previous support order or judgment. In the absence of an URESA order nullifying amounts prospectively due under a support order or divorce decree, the correct measure of arrearages is the difference between the amount which would have been due under the original judgment and the actual amount credited under that judgment or a subsequent URESA order. The judgment is remanded for proceedings consistent with this opinion.

GIERKE and MESCHKE, JJ., concur.

VANDE WALLE, Justice, dissenting.

This appeal was argued on the premise that the McHenry County district court had no authority to amend the support order of

the Ward County district court. Were it not for URESA, that might well be true. See *Nygord v. Dietz*, 332 N.W.2d 708 (N.D. 1983). However, as the majority opinion notes, once recourse is had to URESA the rules change and the specific statutory provisions contained therein permit the responding court to modify the support order under certain circumstances. I therefore agree with nearly all of the analysis of the Uniform Reciprocal Enforcement of Support Act contained in the majority opinion. I cannot, however, agree with the conclusion reached therein and, as a result, I dissent.

In the best of all worlds the trial courts would foresee all issues that might be raised on appeal and therefore meticulously prepare the orders which we review on appeal so there would be no question as to intent. Neither the trial courts nor, for that matter, this court can, in preparing the opinions and orders, foresee every issue that will arise in the future which will require an interpretation of an opinion or order. In this instance I believe the Ward County district court correctly interpreted the order of the McHenry County district court.

I would not object to applying prospectively the rule adopted by the majority opinion that the responding court must, in so many words, specifically state it nullifies the order for child support contained in the judgment attempted to be enforced. However, to conclude, after the fact, as does the majority opinion, that the August 29, 1980, order of the McHenry County district court does not so specifically provide is too formalistic.

Short of stating that the Ward County judgment is hereby modified or nullified, it is apparent to me that the August 1980 order of the McHenry County district court did specifically provide that it modified the Ward County judgment. As an example, it provided that no support payments would be due "as long as the two minor children are in the custody of the Respondent." Although there apparently is some issue as to the months that the children were in the custody of Preston Fennell, that order, to me, clearly provides that it modifies the

Ward County judgment which required payments each month without exception until the youngest child reached her 18th birthday. The obvious reason for this modification was that Preston would have the responsibility of providing for the children while they were in his custody and that he should not also have to make payments for those months. To now conclude, as does the majority opinion, that Preston must make payments for those months the children were in his custody is not only unjust, it is contrary to the specific provisions of the order.

I agree that past-due and unpaid arrearages cannot be modified even under URESA, and I therefore would remand for the sole purpose of permitting amendment of the judgment to include that amount. In other respects I would affirm the judgment of the district court.

LEVINE, J., concurs.