425 So.2d 992 (1983)
CITY AND COUNTY OF SAN FRANCISCO and Eda Fuentes
v.
Gene A. JUERGENS.
No. 5-324.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1983.
*993 John M. Mamoulidas, William C. Credo, III, Andrea Price, Gretna, for plaintiff-appellant.
Carol Lynn Doskey, New Orleans, for defendant-appellee.
Before BOWES, CURRAULT and GRISBAUM, JJ.
CURRAULT, Judge.
This suit arises from an action brought by plaintiff, the City and County of San Francisco (hereinafter referred to as the State) against defendant Gene A. Juergens for reimbursement of welfare monies paid to defendant's ex-wife and child. The action was brought pursuant to the Uniform Reciprocal Enforcement of Support Act (hereinafter referred to as URESA). LSA-R.S. 13:1641 et seq.
The facts of this case reveal that on June 10, 1970, Ida Emelda Fuentes and Gene A. *994 Juergens were married in San Francisco, California. The marital domicile was shortly thereafter established in New Orleans. On April 1, 1972, Eugene Jr. was born; but soon after the birth of Eugene Jr., the couple separated. On June 14, 1972, Ms. Fuentes sought and obtained a judgment of child support from the juvenile court in Orleans Parish in the amount of $70 every two weeks.
Child support payments were made in accordance with the judgment up until the time Juergen's wife left the jurisdiction with the baby without any indication where she was going. Although Mr. Juergens continued to reside in the area and his address was always easily ascertainable, his wife obtained a divorce in Puerto Rico in 1975 without the knowledge of Juergens, and she later remarried. In ignorance of this fact, Juergens subsequently obtained a divorce in Jefferson Parish through service on a curator in September of 1978, and, at that time, the curator was also unable to locate Ms. Fuentes.
In the meantime, Ms. Fuentes applied for Aid to Families with Dependent Children from the City and County of San Francisco in October, 1976, and received aid until August, 1979, when she remarried. The payments were originally set at $224 per month, but were later increased to $331. Seven years after Ms. Fuentes' disappearance from Louisiana, in September of 1979, Mr. Juergens was served with an order to show cause in this instant URESA proceeding.
The URESA petition certified and filed into the juvenile court for the Parish of Jefferson, requested reimbursement to the City and County of San Francisco of $9,377 in welfare payments plus court costs. In a judgment rendered October 13, 1980, the action was dismissed for reasons that appellee should not be made to pay the accumulated bill when no demand was made on him up until that time. Appellants appealed that judgment, and the Fourth Circuit Court of Appeal remanded the case in a judgment rendered on October 13, 1980. The remand was based on the state of the record in the original trial proceeding, in that certain facts the trial judge dictated into the record apparently were ascertained in pre-trial conference from documents not found in the record before the Fourth Circuit Court of Appeal at that time. Accordingly, the case was remanded for evidence. City and County of San Francisco v. Juergens, 405 So.2d 1096 (La.App. 4th Cir.1980).
On remand, the matter was heard before the Honorable Judge Sol Gothard, Division A, Juvenile Court, on January 22, 1982, and the foregoing facts were established by the evidence.
At that time, the juvenile court judge again found in favor of Mr. Juergens and reaffirmed his original judgment dismissing the case. His reasons are based on the fact that Ms. Fuentes left New Orleans and in all the ensuing years did not inform Mr. Juergens of her or the child's whereabouts. The judge further stated that Mr. Juergens had had stable and continuous residence in Metairie, Louisiana and that he had been denied an opportunity to see his child. Furthermore, no demand for support was made during the years Ms. Fuentes was receiving welfare benefits, the only demand being made after the welfare payments were terminated. Consequently, the judge held that it was inequitable to ask him to pay for support now.
From this judgment, the State perfected this appeal.
Appellant asserts the following specifications of error:
I. The trial judge erred in finding it inequitable to demand support from appellee under the facts of this case;
II. The trial judge erred in basing his argument in part on fact that demand for support was only made after welfare payments terminated.
III. The trial court erred in failing to order appellee to reimburse the appellant under the theory that appellant was a negotiorum gestor for appellee, by virtue of having assumed in appellee's absence the obligation of providing support to appellee's minor son, who was in destitute and necessitous *995 circumstances. Louisiana Civil Code Articles 2295, 2299, L.R.S. 14:74(B).
In view of the fact that appellant's second and third assignments of error can be easily disposed of, those issues will be addressed first.
Appellant's second argument concerns the question of prescription. Louisiana law affords an obligee of child support three years to bring an action to enforce the payment, or the obligation is extinguished. LSA-C.C. art. 3538.
The aid payments commenced in October of 1976 and terminated in August of 1979. The action herein was filed on September 25, 1979, or one month prior to the date that prescription would have begun to extinguish the first AFDC payments. Thus, it is clear that an action to enforce child support would not have prescribed in this instance. However, this issue is irrelevant since no such action was brought. This is an action solely for reimbursement of welfare funds by a state agency.
Appellant's third assignment of error urges this court to apply the rules of quasi-contract under LSA-C.C. art. 2295[1]et seq. to the obligation under the theory of negotiorum gestio.
A review of those articles and the case law leads to a conclusion that the facts herein are inapplicable since both articles and cases clearly refer to business operations. Therefore, the court finds no merit in this allegation.
The primary and final issue presented for our consideration is whether appellant has a right to collect reimbursement for Aid to Families with Dependent Children payments under URESA and, if so, whether the trial court erred in finding reimbursement inequitable under these facts.
URESA in Louisiana is embodied in LSA-R.S. 13:1641-1698. The purpose of the Revised Uniform Reciprocal Enforcement of Support Act is to improve and extend by reciprocal legislation the enforcement of duties of support. LSA-R.S. 13:1641. While it is clear that a state or its political subdivision furnishing support has the same right as an individual to initiate proceedings for reimbursement, the duty of support is that imposed under the laws of the state where the obligor resided during the period for which support is sought. LSA-R.S. 13:1661; 13:1662. Certain procedures are prescribed for that obligee seeking reimbursement or continuing support. A simple statement of how the prescribed procedure operates was quoted by the Louisiana Supreme Court with approval in Freeman v. Freeman, 226 La. 410, 76 So.2d 414, 415 (1956) as follows:
The basic method of operation under the reciprocal act is quite simple. An obligee (the person to whom support is owed) petitions the designated court in her home community; that court verifies the petition, attaches its certificate, and transmits the case to a court in the responding state where the obligor (person owing support) is now present; the responding court takes jurisdiction over the obligor, ascertains whether a duty of support is owed, and enters the necessary support order. Interrogatories and depositions are used if the obligor denies that he is liable. The proceeding is civil in nature and confrontation is not necessary.[2]
Thus, the state initiating the proceedings does not have the right to determine the actuality of the obligation, the amount *996 owed, or arrearages, since this is a prerogative of the responding state (that state where the obligor resides or resided during the period the support is owed).
The importance of this prerogative of the obligor's state to determine the merits of a support action cannot be lightly regarded. By this process, the obligor is certain that his rights will be adjudicated with proper due process of law, yet the obligee is protected from a recalcitrant obligor's avoidance of support duties by fleeing from the jurisdiction. Conversely, if the obligee leaves the original jurisdiction, the process works as well to insure that an obligor does not avoid the obligation owed by law or decree simply because the obligee chooses to relocate. The history of the act indicates the primary purpose was to prevent a runaway obligor from fleeing across state lines thereby avoiding his or her parental duties of support.
Louisiana mandates that minor children are owed support by both parents. LSA-C.C. arts. 227, 230. The law, however, also mandates that such awards are subject to a hearing on proof of the child's needs and the ability of an obligee spouse to pay. LSA-C.C. art. 231. Ducote v. Ducote, 339 So.2d 835 (La.1976); Savoie v. Curtis, 354 So.2d 705 (La.App. 4th Cir.1978). Where the URESA statute is employed, the URESA obligee must prove its case as in any other civil action. Freano v. Rosenbaum, 399 So.2d 758 (La.App. 3d Cir.1981); LSA-R.S. 13:1677. Furthermore, it is also well established in protection of a party's due process rights, money judgments in support cases must be supported by jurisdiction over the party cast. Chaplin v. Chaplin, 402 So.2d 795 (La.App. 4th Cir.1981). While URESA removes jurisdictional barriers across state lines, it does so only after the proper proceedings have been initiated.
A review of the facts of this case reveal that the parties married in California, but subsequently relocated to Louisiana. A child was born and sometime thereafter the parties separated. An order of support was granted, and that support was paid conscientiously by the father until such time that the mother fled with the child and effectively disappeared. The father failed in his attempts to locate the mother and child. Several years later, in a divorce action instituted by the father, the curator appointed by the court to represent the absent spouse also failed to locate the mother and child. The father, who has continuously resided in this area from the time the parties separated, at a date unknown to this court, received a cancellation of the support order by the juvenile court for that reason. In the meantime, the mother applied to the State of California for Aid to Dependent Children. Possibly operating under false information provided by the mother, an administrative decision was made to award certain welfare payments to the ex-wife and child. The evidence shows that at no time did the agency attempt to locate the father either prior to or after the decision; which easily could have been done through the federal and state parent finding programs. The procedural protections afforded by the State of Louisiana in child support cases were notably absent. To find for appellant under these facts would be inequitable and contrary to the pronounced public policy of the State of Louisiana in that it would permit a unilateral administrative decision by a foreign state agency to preempt Louisiana law regarding support.
Accordingly, in view of the facts and the law pertinent to the case herein, the judgment of the juvenile court dismissing appellant's claim for reimbursement is hereby affirmed.
AFFIRMED.
NOTES
[1] When a man undertakes, of his own accord, to manage the affairs of another, whether the owner be acquainted with the undertaking or ignorant of it, the person assuming the agency contracts the tacit engagement to continue it (the management he has begun) and to complete it, until the owner shall be in a condition to attend to it himself; he assumes also the payment of the expenses attending the business.

He incurs all the obligations which would result from an express agency with which he might have been invested by the proprietors.
[2] Memorandum prepared and presented to the 1953 Annual Meeting of the National Association of Attorneys General. Quoted also in Carpenter v. Carpenter, 231 La. 638, 92 So.2d 393 (1956). See also LSA-R.S. 13:1665; 1668; 1672 and 1678.