R. Laymond Hupp, et al.

v.

May Lorraine Hupp, et al.

Record No. 890790

April 20, 1990

Present: All the Justices

*Thomas J. Wilson, IV (Wilson & Bowers*, on briefs), for appellants.

*William E. Schmidheiser, III (Glenn M. Hodge; Wharton, Aldhizer & Weaver*, on brief), for appellees.

JUSTICE COMPTON delivered the opinion of the Court.

In this dispute over intestate succession, we consider what effect another jurisdiction's child support proceeding has upon the rights of two illegitimate children to inherit an interest in Virginia real estate.

The facts were stipulated. In 1938, Bessie J. Hupp acquired by deed a 40-acre tract of mountain land located in Rockingham County. In 1960, she died intestate survived by three children who were her sole heirs at law: appellant R. Laymond Hupp, appellant

Nellie Hupp, and Loy B. Hupp. Loy, a resident of Pennsylvania, died intestate and unmarried in 1983. Appellee May Lorraine (spelled by her Maylorraine) Hupp and appellee Lloyd Rhodes claim to be Loy's children by one Grace Rhodes, and each asserts a 1/6th interest in the subject realty.

In March 1988, Laymond and Nellie Hupp filed a bill of complaint in the court below against May Lorraine Hupp and Lloyd Rhodes. The plaintiffs sought a declaratory judgment that defendants are not the children of Loy B. Hupp and that his interest in the realty has passed to the plaintiffs.

Answering, defendants asserted that they are "children" of Loy B. Hupp within the meaning of pertinent Virginia statutes relating to descent and distribution. Defendants alleged that Hupp's paternity was determined by 1953 court proceedings in Pennsylvania "where they were born and resided." Therefore, defendants contended, they are entitled to inherit from Hupp pursuant to the Virginia statute of descents.

The record shows that on June 10, 1953, on oath of "Grace Rhoads," a criminal warrant was issued from the Court of Quarter Sessions of Lebanon County, Pennsylvania, under the style of "Commonwealth of Pennsylvania vs. Loy Hupp," charging Hupp with "Non-Support for his minor children." The warrant, complete with spelling errors, recited:

"That a certain Loy Hupp of Campbelltown, State aforesaid, has failed and neglected to maintain and support his minor children to wit; Loy Rhoads age 2 years, May Lorraine Rhoads age 7 months, and the said defendant is well able to maintain and support his minor children but he refuses to do so."

On the next day, Hupp was committed to the Lebanon County jail in default of bail. On June 24, 1953, the Pennsylvania court convicted Hupp of nonsupport and ordered him to pay $8 weekly to "Grace Rhoads, the mother of the minor children" for the children's support and maintenance "until further order of the Court." Also, Hupp was ordered to pay the court costs and to post security of $300. This judgment never was appealed. To the contrary, for the next 17 years Hupp regularly made weekly support payments through the Pennsylvania Division of Domestic Relations in Campbelltown.

In the present case, the chancellor, upon consideration of the facts and argument of counsel on cross-motions for summary judgment, ruled in favor of defendants. Assigning a number of reasons, the trial court determined that defendants are entitled to inherit from their father his one-third interest in the subject real estate. We awarded the plaintiffs an appeal from the trial court's April 1989 judgment order.

■ Several Virginia statutes relate to this controversy. To determine whether defendants are "children" of the intestate entitled to take under the statute of descents, Code § 64.1-1, the provisions of § 64.1-5.1(3) must be considered. Generally, it provides, in cases where "a relationship of parent and child must be established to determine succession," that no claim of succession by an illegitimate child shall be recognized in settlement of any decedent's estate unless an affidavit alleging parenthood is filed within one year of the date of the parent's death and an action is filed seeking an adjudication of parenthood within the same time. No such affidavit or action was filed in this case.

■ Pertinent to this dispute, the foregoing statute contains an exception to the one-year provision. As applicable to this case, prior to a 1989 amendment, the exception provided that the limitation period "shall not apply in those cases where the relationship between the child born out of wedlock and the parent in question is . . . established . . . by a previously concluded proceeding pursuant to the provisions of § 20-61.1." § 64.1-5.1(3)(iii) (1987 Repl. Vol.).

Section 20-61.1 dealt with support of children of unwed parents.* Generally, that statute established criteria for determining paternity in proceedings for nonsupport. The opening paragraph provided:

"Whenever in proceedings hereafter under this chapter concerning a child whose parents are not married, a man admits before any court having jurisdiction to try and dispose of the same, that he is the father of the child or the court finds that the man has voluntarily admitted paternity in writing, under oath, or if it be shown by other evidence beyond reasonable doubt that he is the father of the child and that he should be responsible for the support of the child, the court may then

---

* Section 20-61.1 (1983 Repl. Vol.) has been repealed and its substance reenacted in Code §§ 20-49.1 through -49.8. Acts 1988, ch. 866, 878.

enter and enforce judgment for the support, maintenance and education of such child as if the child were born in lawful wedlock."

The statute went on to limit the items of "other evidence" allowable to prove that the man was the child's father.

On appeal, the plaintiffs say that the issue is whether the 1953 Pennsylvania proceeding constitutes a "proceeding pursuant to the provisions of § 20-61.1," within the meaning of § 64.1-5.1(3)(iii). Plaintiffs argue that the proceedings contemplated by the Virginia statutes are those conducted only in the courts of the Commonwealth of Virginia, and that a 1953 Pennsylvania proceeding under an entirely different statute fails to comply with the exception in § 64.1-5.1(3)(iii).

Plaintiffs point out that Hupp was prosecuted under § 4733 of the Pennsylvania Penal Code of 1939. *See* Pa. Stat. Ann. tit. 18, § 4733 (Purdon 1963). They contend that the section, entitled "Desertion and nonsupport," "bears no resemblance" to § 20-61.1 because it "makes no attempt to establish a standard for determining paternity." Plaintiffs say that the foreign statute merely provided for the putative father to be arrested and held upon "oath or affirmation, by his wife or children, or either of them, or by any person." Furthermore, plaintiffs point out that the foreign court, "after hearing in a summary proceeding," according to the statute, was empowered only to order the payment of sums for support.

Pointing to the criteria for paternity set forth in § 20-61.1, plaintiffs say there was no finding in the Pennsylvania court (a) that Hupp cohabited openly with the defendants' mother; (b) that he consented to his name being used as the father upon either child's birth record; (c) that he allowed either child to use his surname; (d) that he claimed either defendant as his child on tax returns or other official documents; (e) that he admitted in writing or before any court that he was the father of either child; or (f) that paternity was established by any reliable blood grouping test.

Concluding, plaintiffs argue that the trial court erred in holding "that the 1953 Pennsylvania support proceeding established paternity in a manner that is controlling for purposes of Virginia intestate succession." They say that while the foreign decision "may have been entitled to some interstate respect" for support and

maintenance purposes, the decision cannot control devolution of real property in Virginia. We do not agree.

The United States Constitution, as well as federal and state statutes, requires the courts of this state to give full faith and credit to a judgment rendered in another state, provided the foreign court had jurisdiction over the parties and the subject matter. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738; Code § 8.01-389(B). Specifically, the Virginia statute provides that the courts of the Commonwealth shall give the records of any judicial proceeding of any court of another state "the full faith and credit given to them in the courts of the jurisdiction from whence they come."

In Pennsylvania, an order for support of an illegitimate child "necessarily determines the issue of paternity." *Manze* v. *Manze*, 523 A.2d 821, 824 (Pa. Super. 1987); *Shindel* v. *Leedom*, 350 Pa. Super. 274, 278, 504 A.2d 353, 355 (1986); *Commonwealth* v. *Nedzwecky*, 203 Pa. Super. 179, 182, 199 A.2d 490, 491 (1964). In order to challenge paternity, an appeal must be taken directly from the support order. "Absent any appeal, the issue of paternity is established as a matter of law." *Manze*, 523 A.2d at 824. Implicit in the entry of a support order is the fact that the man was the father of the child. Such a "relevant fact necessarily determined as a prerequisite to the entry of an original support order may not, under the doctrine of res judicata, be challenged or put at issue in any subsequent proceeding." *Nedzwecky*, 203 Pa. Super. at 182, 199 A.2d at 491.

Consequently, because the Pennsylvania support judgment makes the issue of paternity res judicata in Pennsylvania, relitigation of that issue in Virginia is barred, there being no question raised in this case of the jurisdiction of the Pennsylvania court. "The forum court is bound by the original forum's determination of the preclusive effect of its former judicial proceedings." *Nottingham* v. *Weld*, 237 Va. 416, 420, 377 S.E.2d 621, 623 (1989). *See Romeo* v. *Romeo*, 218 Va. 290, 293, 237 S.E.2d 143, 144-45 (1977) (New York separation judgment made issue of validity of marriage res judicata in New York and barred relitigation of issue in Virginia).

And, contrary to plaintiffs' contention, the binding effect of the Pennsylvania judgment in Virginia extends to issues of intestate succession as well as to issues of support and maintenance. Virginia permits previously concluded nonsupport proceedings to

settle questions of paternity for descent and distribution purposes. Exclusion (iii) of Code § 64.1-5.1(3) expressly recognizes that paternity may be established in a § 20-61.1 nonsupport proceeding. In addition, Code § 64.1-5.2, a part of the Wills and Decedents' Estates Title of the Code, likewise recognizes the conclusive effect of proceedings under the nonsupport statute on the question of paternity. Section 64.1-5.2 provides, as pertinent:

"If a proceeding to determine parentage has been initiated and concluded pursuant to former § 20-61.1 or Chapter 3.1 (§ 20-49.1 et seq.) of Title 20, and the court enters a judgment against a man for the support, maintenance and education of a child as if the child were born in lawful wedlock to the man, that judgment shall be sufficient evidence of paternity for the purposes of this section."

Consequently, we hold under the facts and circumstances of this case that the Pennsylvania adjudication of paternity has established for Virginia intestate succession purposes the status of defendants as children of the decedent. Therefore, it is unnecessary to apply § 64.1-5.1 because the "relationship of parent and child" already had been "established" by the time of the decedent's death. It follows that the trial court correctly declared that defendants are the heirs of Loy B. Hupp and should inherit his interest in the subject real estate.

Thus, the trial court's judgment will be

*Affirmed.*