## Salem

## HARRY P. PRICE, JR.

V.

## BRENDA LEE LOGWOOD PRICE

AND

## DEPARTMENT OF SOCIAL SERVICES DIVISION OF CHILD SUPPORT ENFORCEMENT

Nos. 2073-91-4
1300-92-4
1502-92-4
1750-92-4

Decided September 21, 1993

COUNSEL

Wayne Hartke (Hartke & Hartke, on briefs), for appellant.

E. Ralph Coon, Jr. (Charlton E. Gnadt, Jr., Assistant Commonwealth's Attorney; Craig D. Johnston; Coon & Johnston, on briefs), for appellees.

OPINION

**BENTON, J.**—Harry P. Price, Jr. (husband) appeals from orders entered by the circuit judge holding that: (1) a North Carolina support order entered in an action brought by his wife pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA) was not entitled to full faith and credit; (2) the husband could not register the North Carolina support order in Virginia under the URESA statute; and (3) the husband was in contempt for failing to pay support as ordered by a Virginia divorce decree. The husband contends: (1) he cannot be held in contempt of court for violating a support order in a divorce decree entered against him by a Virginia court that did not obtain personal jurisdiction over him; (2) the North Carolina support order is binding on the parties and is entitled to be given full faith and credit; (3) the wife was bound by her written stipulations regarding support arrearages, financial circumstances, and requested relief, all of which were incorporated in a consent order entered by the North Carolina court; (4) that no one other than the "obligor" may move to vacate the registration of a URESA court order pursuant to Code § 20-88.5; (5) the "automatic adjustment clause" of the parties' separation agreement effectively reduced the husband's support obligations; (6) the circuit judge abused his discretion in ordering the husband to pay support that is currently more than his total income; and (7) the circuit judge was so biased as to deny the husband a fair and impartial hearing on the merits of the legal claims. For the reasons that follow, we decide the jurisdiction issues and reverse the orders of the circuit court.

I.

The wife filed in this Court a motion to dismiss the appeal. She alleges that the husband has not complied with the requirements of Rule 5A:25 concerning the preparation of the appendix. We conclude that the defects that exist in the appendix are minor and not material to a resolution of the issues raised in the appeal. The Court has available the record on appeal and "may . . . consider other parts of the record"

not contained in the appendix. Rule 5A:25(h). Thus, we decline to dismiss the appeal because of these defects.

The wife also has moved to dismiss the appeal because of the husband's failure to timely file the transcripts of the various *ore tenus* hearings. *See* Rule 5A:8. She asserts that because the transcript is indispensable to the resolution of the issues raised by the husband, the failure to timely file the transcript requires dismissal. *See Barrett v. Barrett,* 1 Va. App. 378, 380, 339 S.E.2d 208, 209-10 (1986). We agree that the transcript is indispensable to some of the issues the husband has presented for review. The rule is well established, however, that "[i]f the record on appeal is sufficient in the absence of the transcript to determine the merits of the appellant's allegations, [this Court is] free to proceed to hear the case." *Turner v. Commonwealth,* 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986). We conclude that the record on appeal provides a sufficient basis upon which this Court can fully and adequately consider the jurisdiction questions raised by the husband.

## II.

The facts and circumstances stated in this opinion are derived from the record on appeal which consists of the orders and pleadings filed in the circuit court. This record establishes that the parties were married in Virginia in 1971 and that they last cohabited together in September 1983 in Connecticut. Two months after their separation, the parties entered into a property settlement agreement in Maryland that required the husband to pay child support of $1,000 per month and spousal support of $1,200 per month.

In 1985, the wife filed for divorce in the Circuit Court of Prince William County, Virginia. The petition alleged that she resided in Prince William County and that the husband resided in Medfield, Massachusetts. The record reflects, however, that the husband was served with process in Normal, Illinois. The husband filed no pleadings and made no appearance in the divorce action. The final decree of divorce was entered September 10, 1985, and it "ratified, approved and confirmed . . . and incorporated" the property settlement agreement.

On May 29, 1991, the Clerk of the Juvenile and Domestic Relations District Court of Prince William County sent notice to the parties that the husband had registered with that court an order of support entered May 14, 1989, by the General Court of Justice, District Court

Division, Craven County, North Carolina. The order was attached to the notice and recited that a support action was commenced against the husband in North Carolina in 1989 in response to the wife's filing of an URESA petition in Virginia. The order also contained the following recitations:

5. Upon the call of the case for hearing, both parties, through their respective counsel, stated to the court that all matters and differences between these parties had been compromised and settled. Thereafter, these parties through their respective counsel, stipulated as follows:

(a) The plaintiff is presently a resident of the State of Virginia. She has resided in Virginia for a substantial period of time.

(b) The defendant is a citizen and resident of the State of North Carolina. He has resided in North Carolina for at least six months next preceding the institution of this action.

(c) These parties were married on 14 August 1971 in Virginia. Two children were born of this marriage . . . .

(d) On 26 November 1983 these parties executed a separation agreement in the State of Maryland. This separation agreement required the defendant to pay $500.00 per month per child in child support to the plaintiff. Furthermore, this agreement required the defendant to pay $1,200.00 per month as alimony to the defendant. Accordingly, the defendant's total obligation to the plaintiff under the separation agreement was $2,200.00 per month.

(e) This separation agreement was modified by these parties on 25 February 1986. Thereafter, the defendant was required to pay $400.00 per month in alimony to the plaintiff and $400.00 per month in child support, for a total obligation of $800.00 per month.

(f) These parties were divorced by a decree of absolute divorce entered in . . . Virginia, on 10 September 1985. This Virginia decree incorporated by reference the separation agreement previously entered.

(g) Circumstances have changed substantially since the entry of the divorce decree between these parties. This change of circumstances includes, but is not limited to, the following:

(1) At the time of the entry of the divorce between these parties, the defendant was residing in the State of Maryland. He has since moved to the State of North Carolina in order to provide for his ailing mother.

(2) The defendant is presently employed as an insurance salesman in New Bern, North Carolina. His earnings are significantly less than they were at the time of the entry of the divorce between these parties. For the year, 1988, he had a gross income of $14,989.60.

(3) The defendant has remarried. He has one child by his new wife. He has living expenses for his present family in the approximate amount of $1,580.00 per month.

(4) The defendant's mother resides with him. She is advanced in age and requires constant attention. The defendant has assumed the responsibility of providing care for his mother.

(5) The defendant does not now have the ability to pay $800.00 per month in child support to the plaintiff or to pay alimony to the plaintiff. Considering his earnings, estate, and accustomed standard of living, the sum of $600.00 per month, or $300.00 per child per month, is a reasonable amount of child support to be paid by the defendant to the plaintiff.

(6) The plaintiff is presently employed as a sales associate for Leggett's Company. She has a net income in excess of $800.00 per month. She is capable of providing support for herself and a portion of the support for her children.

(h) The defendant is $1,200 behind in his alimony and child support obligation pursuant to the divorce decree entered in Virginia. He does not, however, have the present ability to satisfy this arrearage. Therefore, this arrearage should be held in abeyance pending further order of this court.

6. Based on these stipulations, these parties do pray the court to enter an order as follows:

(a) The defendant, Harry Porter Price, Jr., shall pay to the plaintiff, Brenda L. Price, the sum of $300.00 per month per child, for a total obligation of $600.00 per month, as child sup-

port. This obligation shall commence with the payment of $300.00 on 1 June 1989 and $300.00 on 15 June 1989. These payments shall continue each and every month thereafter in like manner until further order of this court or until such time as one or both of these children reach the age of majority, become emancipated, or until such time as child support is no longer required by operation of law. The defendant shall not pay any alimony for the plaintiff.

(b) The defendant, Harry Porter Price, Jr., is $1,200.00 in arrears in his previous child support obligation. The defendant shall not be required to make any payments against this arrearage, however, so long as he is in full compliance with the other terms of this order.

The order adopted the stipulations of the parties and ordered the following relief:

1. The defendant, Harry Porter Price, Jr., shall pay to the plaintiff, Brenda L. Price, the sum of $300.00 per month per child, for a total obligation of $600.00 per month, as child support. This obligation shall commence with the payment of $300.00 on 1 June 1989 and $300.00 on 15 June 1989. These payments shall continue each and every month thereafter in like manner until further order of this court or until such time as one or both of these children reach the age of majority, become emancipated, or until such time as child support is no longer required by operation of law. The defendant shall not pay any alimony for the plaintiff.

2. The defendant, Harry Porter Price, Jr., is $1,200.00 in arrears in his previous child support obligation. The defendant shall not be required to make any payments against this arrearage, however, so long as he is in full compliance with the other terms of this order.

After the juvenile court sent copies of the North Carolina support order and the notice to the wife, the Virginia Department of Social Services, Division of Child Support Enforcement, acting on behalf of the wife and citing Code § 20-88.30:6, filed a motion to vacate the registration of the North Carolina support order. On August 23, 1991, the juvenile court ruled that it had no jurisdiction to register the North Carolina support order. The husband filed a timely appeal of the juvenile court order to the circuit court.

The same day that the juvenile court entered its order, the wife filed a motion in the circuit court to require the husband to show cause why he should not be held in contempt for failure to pay support as ordered by the circuit court's divorce decree. On August 30, 1991, in response to the wife's motion, the circuit judge entered a rule to show cause against the husband requiring him to appear "to show cause, if he can, why he should not be punished by fine and imprisonment for . . . contempt" for not obeying the terms of the divorce decree requiring the payment of $2,200 per month for support of the wife and children.

On October 23, 1991, the circuit judge issued an opinion letter addressing "whether [the circuit] court must give full faith and credit to the Order of the North Carolina Court; and, if not, whether [the husband] should be held in contempt for his failure to comply with the orders of [the circuit] court." The circuit judge ruled that the North Carolina court had no jurisdiction to grant the relief that it did pursuant to URESA and that the Virginia circuit court was not required to give full faith and credit to the North Carolina support order. The circuit judge also held the husband in contempt for failing to make the payments ordered in the 1985 divorce decree. An order was entered consistent with the opinion letter. Later, an order was entered denying the husband's motion to register the North Carolina order and stating as its reason "that the duty of support is based on [the] Virginia order entered September 10, 1985, and not [the] North Carolina order entered July 14, 1989." The husband appealed from these orders.

### III.

■ "[A]lthough a court may affirm, ratify and incorporate a property settlement agreement into its final decree, it may only enforce personal obligations contained therein when personal jurisdiction has been obtained over the party obligated to perform." *Morris v. Morris,* 4 Va App. 539, 545, 359 S.E.2d 104, 108 (1987).

The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought and a sufficient connection between the defendant and

the forum State to make it fair to require defense of the action in the forum.

*Kulko v. Superior Court of California,* 436 U.S. 84, 91 (1978) (citations omitted).

■ To obtain personal jurisdiction over a person who has executed a property settlement agreement outside Virginia, "there must be more than a simple connection between the contract which is being sued upon and the state asserting jurisdiction." *Herman Cantor Corp. v. Cattle King Packing Co.,* 22 B.R. 604, 606 (Bankr. E.D. Va. 1982). The mere allegation that the plaintiff, a party to the agreement, is present in Virginia is not a sufficient connection to give Virginia personal jurisdiction over the defendant. *Id.* at 606-07. Where, as in this case, the defendant in a divorce suit is a non-resident, the complaint or other pleadings in the divorce suit must allege, at a minimum, a connection to Virginia that is recognized by Virginia's long-arm statute. *See* Code § 8.01-328.1.

■ In relevant part, the wife's bill of complaint in the divorce action alleged that the parties were married in Virginia, that the wife was domiciled in and a resident of Virginia, that the husband was not a resident of Virginia, and that the parties last cohabited in Connecticut. The final decree of divorce recited those same facts. In addition, the record proves that the agreement that was incorporated in the decree was signed by the parties in Maryland two years prior to the filing of the divorce. The agreement referred to Virginia only as the place where the parties were married. The recitations in the divorce pleadings and the final divorce decree were plainly insufficient to enable a Virginia court to obtain personal jurisdiction over the husband, a non-resident, under any provision of Code § 8.01-328.1. Furthermore, it is well established in Virginia that "[j]urisdiction in divorce suits is purely statutory, and it cannot be acquired by the courts inferentially or through indirection." *Stroop v. Stroop,* 10 Va. App. 611, 616, 394 S.E.2d 861, 864 (1990).

"[L]acking personal jurisdiction, the trial court had no power in the divorce proceeding to resolve . . . support issues." *Hayes v. Hayes,* 3 Va. App. 499, 505, 351 S.E.2d 590, 593 (1986). Thus, the support obligations contained in the agreement became part of the divorce decree, but remained unenforceable by resort to the contempt powers of the court that rendered the divorce. *Morris,* 4 Va. App. at 543, 359 S.E.2d at 107. Although the circuit court did not obtain personal juris-

diction over the husband in the divorce action, the allegations in the divorce pleadings sufficed to provide the trial court with *in rem* jurisdiction to dissolve the marriage. Code § 20-97. *See also Estin v. Estin,* 334 U.S. 541, 546-47 (1948); *Morris,* 4 Va. App. at 545-46, 359 S.E.2d at 107-08. Accordingly, we hold that although the circuit court entered a valid divorce decree it lacked personal jurisdiction over the husband when the divorce decree was entered in 1985 and it had no power to enter an enforceable support order. Consequently, the judge's order ruling the husband in contempt for violating the support provisions of the 1985 divorce decree is reversed and the rule to show cause is dismissed.

## IV.

The husband has also appealed from an order refusing to allow the husband to register the North Carolina support order obtained by the wife. We conclude that the judge erred in refusing to permit the order to be registered.

■ "The United States Constitution, as well as federal and state statutes, requires the courts of this state to give full faith and credit to a judgment rendered in another state, provided the foreign court had jurisdiction over the parties and subject matter." *Hupp v. Hupp,* 239 Va. 494, 499, 391 S.E.2d 329, 332 (1990). The Virginia URESA statutes specifically permit the registration of a "foreign support order in a court of this Commonwealth in the manner, with the effect, and for the purposes . . . provided" in the URESA statutes. Code § 20-88.30:2.

■ The purposes of URESA "are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." Code § 20-88:12. When the wife filed a petition pursuant to URESA in Virginia, it was the duty of the Virginia Court, the "initiating court," to find that the petition set forth facts from which it could be determined that the husband owed a duty of support and that a North Carolina court could obtain jurisdiction of the husband or his property. Code § 20-88.22. As we stated in Part III, the Virginia divorce decree did not create a duty of support imposable by law because the order of support was void for lack of personal jurisdiction over the husband. The separation agreement entered into by the parties in Maryland, however, was a valid contract; thus, it created a duty of support. "'Duty of support' includes any duty of support im-

posed or imposable by law, or by any court order, decree or judgment." Code § 20-88.13.

The URESA petition was transmitted to the appropriate court in North Carolina, the place where the husband resided. *See* Code § 20-88.22. Following the husband's response to the petition, the husband and wife entered into an extensive stipulation and compromised all matters and differences that existed between them. The North Carolina court order recited that both parties were represented by counsel, that the court had jurisdiction over the parties and the subject matter, that the duty of support arose from the "separation agreement previously entered by these parties," and that the husband was ordered to pay support in the manner specified in the order.

URESA clearly designated the choice of law to be North Carolina law:

Duties of support enforceable under this law are those imposed or imposable under the laws of any state where the obligor was present during the period or any part of the period for which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

Code § 20-88.18. The North Carolina court, which had jurisdiction over the URESA petition, was the "responding court." Jane H. Gorham, *Stemming the Modification of Child-Support Orders by Responding Courts: A Proposal to Amend RURESA Antisupersession Clause,* 24 U. Mich. J. L. Reform 405, 409 (1991). Absent proof to the contrary, we presume that the North Carolina court acted in accordance with the applicable law. Based on the stipulations and the findings that the husband owed a duty of support arising from the settlement agreement, the North Carolina judge, acting as the "responding court," entered a valid and enforceable support order. *Id.* at 409-10.

The civil enforcement procedure in URESA ensures that interstate enforcement is possible in situations, such as in this case, where no valid pre-existing order exists. *Id.* at 410. Code § 20-88.30:6 of URESA reads in pertinent part:

Upon registration, the registered foreign support order shall be treated in the same manner as a support order issued by a court of this Commonwealth. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening,

vacating, or staying as a support order of this Commonwealth and may be enforced and satisfied in like manner.

Furthermore, the Supreme Court of Virginia has held that a decree that is subject to modification and, thus, "does not possess such a degree of finality as to be entitled to full, faith, and credit under the mandate of the federal Constitution, may be recognized and treated 'with the same force and effect as if it had been entered in Virginia' under the doctrine of comity." *Scott v. Sylvester,* 220 Va. 182, 184, 257 S.E.2d 774, 775 (1979) (quoting *McKeel v. McKeel,* 185 Va. 108, 113, 37 S.E.2d 746, 749 (1946)). This result is mandated by URESA. *Id.* at 184-85, 257 S.E.2d at 775. *See* Code §§ 20-88.13(14) and 20-88.30:6(A).

The record reveals that the husband followed the requirements of Code § 20-88.30:5 in attempting to register the order of the District Court of Craven County, North Carolina in the Prince William County juvenile court. The juvenile court and the circuit court erred in refusing to register the order.

## V.

We decline to consider the remaining issues because the transcripts were not timely filed and we have determined that the transcripts are indispensable to the determination of those issues. Accordingly, for the reasons stated in this opinion, we reverse the order of contempt and dismiss the rule to show cause. We also reverse the order refusing to register the North Carolina support order and remand the case to the circuit court for registration of the order.

*Reversed and dismissed in part,*
*and reversed and remanded in part.*

Bray, J., and Fitzpatrick, J., concurred.