**Gary DuWayne CORDIE, Plaintiff and Appellant,**

v.

**Renae TANK, f/k/a Renae Denise Cordie, Defendant and Appellee.**

Civ. No. 940298.

Supreme Court of North Dakota.

Sept. 22, 1995.

**216**

Janet H. Zander, Williston, for plaintiff and appellant.

Nathan L. Seeger of Krekelberg, Sorkness & Seeger, Fergus Falls, Minnesota, for defendant and appellee.

LEVINE, Justice.

Gary DuWayne Cordie appeals from a judgment of the district court for McKenzie County modifying a Minnesota judgment for child support and awarding Renae Tank $19,674 in child support arrearages. We vacate the judgment because the district court for McKenzie County lacked subject-matter jurisdiction to modify or enforce the Minnesota judgment.

Cordie and Tank were divorced in May 1978 by judgment of the district court for Cass County (Cass County judgment). Cordie was awarded custody of the parties' one child, LeAnn, who was born February 5, 1976. Tank was ordered to pay $50 per month for child support. In 1979, Cordie moved to Fergus Falls, Otter Tail County, Minnesota. In 1980, Tank was relieved of her child support obligation by modified judgment of the district court for Cass County (modified Cass County judgment). Subsequently, Cordie and his second wife, Judy, were committed to the Fergus Falls Hospital

for mental health care and LeAnn was placed in foster care in Minnesota. In June 1986, the district court for Otter Tail County, Minnesota, awarded custody of LeAnn to Tank (Minnesota judgment). Exercising jurisdiction under the Uniform Child Custody Jurisdiction Act, Chapter 518A, Minn.Stat., the Minnesota court also ordered:

> Gary Cordie should pay child support to Renae [Tank] in accordance with the guidelines set forth by Minnesota statutes from his net income, (income after deductions of withholding and social security taxes).

No monthly child support amount was set at that time, but, the Minnesota court reserved the amount of support for future calculation:

> It is ordered: ... Gary Cordie shall furnish reasonable child support to the petitioner to be determined by future order of the court.

From the record, it is unclear whether a subsequent hearing on child support was held in Minnesota.[1]

In November 1993, Tank began proceedings to register the Minnesota judgment in McKenzie County as a foreign support order. *See* NDCC § 14–12.1–30. Tank, however, never completed the registration process. In December 1993, Tank filed a motion to change the venue of her divorce action from Cass County, North Dakota, to McKenzie County, North Dakota, where she and LeAnn resided. The district court for Cass County granted the change of venue in January 1994. In June 1994, Tank started this action by moving to modify the Cass County judgment, the modified Cass County judgment, and the Minnesota judgment. At that time, LeAnn was eighteen years old and had graduated from high school. Tank requested that the court require Cordie pay $282 per month for child support, retroactive to February 1986, the month Tank assumed custody of LeAnn, and continuing until May 1994, the month LeAnn graduated from high school. Tank introduced a copy of the 1986

---

1. Cordie testified he appeared at a subsequent hearing in Otter Tail County district court to set the amount of child support. He states that because he was unemployed at the time, the Minnesota district court did not set a support amount. However, he could not remember if the district court relieved him of the support obligation or simply continued to reserve the issue for future determination.

Minnesota judgment into evidence. The district court for McKenzie County, relying on the Minnesota judgment, calculated a support obligation for Cordie by applying the North Dakota child support guidelines to Cordie's net income for each year from 1986 through 1994. The district court awarded Tank judgment against Cordie for $19,674 in accrued, but unpaid, child support.

■ Cordie appealed, arguing that the district court for McKenzie County erred by retroactively modifying his child support obligation. We agree that retroactive modification of an accrued child support obligation is impermissible under our law. NDCC § 14–08.1–05. *See Coogan v. Fennell*, 379 N.W.2d 791 (N.D.1985). However, we need not decide whether there was a retroactive modification, because we conclude the district court for McKenzie County lacked subject-matter jurisdiction to modify or enforce the Minnesota child support order in any respect.

■ Although Cordie does not challenge the district court's subject-matter jurisdiction, we consider the issue sua sponte. *E.g. Larson v. Dunn*, 474 N.W.2d 34 (N.D.1991). In order to issue a valid order or judgment, a court must have jurisdiction over both the subject matter of the action and the parties. *Id.* Subject-matter jurisdiction is the court's power to hear and determine the general subject involved in the action. *Id.; see also Reliable, Inc. v. Stutsman County Comm'n*, 409 N.W.2d 632 (N.D.1987). While a party may voluntarily submit to the personal jurisdiction of the court, "subject-matter jurisdiction is derived from the constitution and the laws, and cannot be conferred by agreement, consent or waiver." *Long v. Long*, 439 N.W.2d 523, 525 (N.D.1989). The absence of subject-matter jurisdiction may be raised by the court at any stage of the proceedings. *Hayden v. Workers' Compensation Bureau*, 447 N.W.2d 489 (N.D.1989); *see also* James & Hazard, *Civil Procedure*, § 2.1 (3d ed. 1985).

■ Trial courts have continuing jurisdiction over child support matters. NDCC § 14–05–22(1); *State of Minnesota v. Snell*, 493 N.W.2d 656 (N.D.1992) ["Courts which award periodic child support retain the au-

thority to modify the amount to be paid when there has been a showing that the circumstances of the parties have materially changed."]. Continuing jurisdiction, however, is neither permanent nor constant. *See Malaterre v. Malaterre*, 293 N.W.2d 139 (N.D.1980) [stating that continuing jurisdiction does not continue when "the district court loses jurisdiction over one or more of the parties to the action."]; *Thomas v. Thomas*, 382 N.W.2d 639 (N.D.1986) [indicating that each proceeding which takes place based on a court's continuing jurisdiction is akin to a new proceeding]; *DeForest v. DeForest*, 228 N.W.2d 919 (N.D.1975) [stating that, when there is continuing jurisdiction, either party can move for a modification "after jurisdiction in the trial court has been re-established."] Here, the Minnesota court interrupted the trial court's continuing jurisdiction in 1986 when it took jurisdiction over LeAnn and rendered judgment establishing continuing jurisdiction in itself. The McKenzie County trial court recognized the Minnesota judgment, and based its own order upon it. The Constitution does not require that we give full faith and credit to foreign child support judgments. *See Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910). We respect them, however, based on principles of comity. *See Gruber v. Wallner*, 198 Colo. 235, 598 P.2d 135, 137 (1979); *Worthley v. Worthley*, 44 Cal.2d 465, 283 P.2d 19 (1955); *see also* Eugene F. Scoles and Peter Hay, Conflict of Laws 537 (2d ed. 1992) ["[T]he clear practice of state courts is to recognize the foreign support order, when rendered by a court with competent jurisdiction ..."]. Our state has recognized the need to respect out-of-state child support judgments since 1951, when the legislature first passed the Uniform Reciprocal Enforcement of Support Act. *See* 1951 N.D. Laws ch. 122. Therefore, we hold that the 1986 Minnesota judgment terminates the continuing jurisdiction of North Dakota courts under the original Cass County divorce decree. Our analysis now turns to whether the trial court had subject-matter jurisdiction to enforce or modify the Minnesota judgment.

■ A district court's subject-matter jurisdiction to enforce or modify a foreign

support order is governed by the provisions of the Revised Uniform Reciprocal Enforcement of Support Act, chapter 14–12.1, NDCC (RURESA).[2] The purpose of RURESA is to provide a mechanism, by reciprocal legislation, for interstate enforcement of support obligations. *See* NDCC § 14–12.1–01. We construe uniform acts in the same manner as other jurisdictions to provide consistent and uniform application, and therefore, we look for guidance to the decisions of other states interpreting those statutes. *Zuger v. N.D. Ins. Guaranty Ass'n*, 494 N.W.2d 135 (N.D. 1992).

An obligee seeking enforcement or modification, or both, of a foreign support order[3] that has not been reduced to a money judgment has two choices of civil remedies under the provisions of RURESA. The first, the standard RURESA action, is appropriate for an obligee who wishes to establish, modify or enforce an ongoing duty of support. NDCC § 14–12.1–24. *See Coogan*, 379 N.W.2d at 796. The obligee initiates the action by filing a petition alleging that a nonresident obligor owes a duty of support. NDCC § 14–12.1–11. The court in which the petition is filed, usually in the obligee's state of residence, is the "initiating court." NDCC § 14–12.1–02(4); *Formanack v. Formanack*, 234 Neb. 325, 451 N.W.2d 250 (1990). If the petition sets forth facts showing a duty of support, and there is a "responding court" which can exercise personal jurisdiction over the obligor, the initiating court transmits three certified copies of the obligee's petition and a copy of its chapter on RURESA to the responding court in the appropriate state. NDCC § 14–12.1–14. The initiating court does not enforce or modify the order, as that is the duty of the responding court. NDCC § 14–12.1–18. *See Formanack*, 451 N.W.2d at 255; *In re Marriage of Gifford*, 152 Ill. App.3d 422, 105 Ill.Dec. 527, 504 N.E.2d 812 (1987). *See, e.g., Coogan*, 379 N.W.2d at 796. The responding court turns the RURESA petition over to the prosecuting attorney who represents the interests of the responding state and the obligee in enforcing the alleged duty of support. *See* NDCC § 14–12.1–18. If the responding court, after an evidentiary hearing, finds a duty of support on the part of the obligor, it may order the obligor to furnish "support or reimbursement therefor" in accordance with the law. *See* NDCC § 14–12.1–24; *Formanack*, 451 N.W.2d at 255.

In a standard RURESA action, the duty of support is to be determined under the law of the responding state. NDCC § 14–12.1–07; *State ex rel. McDonnell v. McCutcheon*, 337 N.W.2d 645 (Minn.1983). The responding court may rely on a court order for support or any other legal duty of support imposable under its laws. NDCC § 14–12.1–02(2); *In re Marriage of Lurie*, 33 Cal.App.4th 658, 39 Cal.Rptr.2d 835 (1995). The responding court may order an entirely different support amount than has been previously awarded or may prospectively modify an existing support obligation. NDCC § 14–12.1–24(2); *see also Rimsans v. Rimsans*, 261 N.J.Super. 214, 618 A.2d 854, (A.D.1992). It may also determine arrearages under a

2. The Revised Uniform Reciprocal Enforcement of Support Act, NDCC ch. 14–12.1, was repealed by the 1995 legislature and replaced by the Uniform Interstate Family Support Act (UIFSA), NDCC ch. 14–12.2, 1995 N.D. Laws, ch. 157 (S.B.2069) (effective August 1, 1995). Under UIFSA, ch. 14–12.2, a party may only request modification of an order registered as a foreign support order if the party also meets the requirements of NDCC §§ 14–12.2–45:

"1. After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if, after notice and hearing, it finds that:
a. The following requirements are met:
(1) The child, the individual obligee, and the obligor do not reside in the issuing state:
(2) A petitioner who is a nonresident of this state seeks modification; and
(3) The respondent is subject to the personal jurisdiction of the tribunal of this state; or
b. An individual party or the child is subject to the personal jurisdiction of the tribunal and all of the individual parties have filed a written consent in the issuing tribunal providing that a tribunal of this state may modify the support order and assume continuing, exclusive jurisdiction over the order."

3. A support order is "any judgment, decree, or order of support in favor of an obligee whether temporary or final, or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered." NDCC § 14–12.1–02(14).

duty of support and enter judgment for their payment. *Coogan*, 379 N.W.2d at 796; *see Rimsans*, 618 A.2d at 858.

 If Tank wanted ongoing child support for LeAnn, or arrearages under the Minnesota support order, she could have filed a standard RURESA petition under NDCC § 14–12.1–11, and the duty of the district court for McKenzie County, as the initiating court, would have been to review Tank's petition alleging a duty of support and, if it found facts alleging a duty of support, to transmit the petition to Minnesota for enforcement. Instead, Tank attempted to enforce the Minnesota support order in North Dakota. But, RURESA does not authorize the North Dakota court, as the initiating court, to make a determination of Cordie's duty of support. *See* NDCC § 14–12.1–18. *Rimsans*, 618 A.2d at 860; *Formanack*, 451 N.W.2d at 255; *Gifford*, 105 Ill.Dec. 527, 504 N.E.2d at 814; *City and County of San Francisco v. Juergens*, 425 So.2d 992 (La. App.1983). Determining an obligor's duty of support and awarding arrearages under the support order in a standard RURESA action is purely the province of the responding court, based on its law and policy, and the district court for McKenzie County could not, as an initiating court, determine, modify or enforce Cordie's alleged duty of support. *Rimsans*, 618 A.2d at 860; *Juergens*, 425 So.2d at 995–96.

 The second option available to Tank under our RURESA law was to register the Minnesota support order according to NDCC § 14–12.1–39. A foreign support order registered in North Dakota is treated the same as an original child support order entered by a North Dakota court. NDCC § 14–12.1–40(1). Consequently, a registered order is governed by North Dakota law in regard to both modification and enforcement. *See Pinner v. Pinner*, 33 N.C.App. 204, 234 S.E.2d 633 (1977). *See also Wilson v. Ransom*, 233 Neb. 427, 446 N.W.2d 6 (1989); *Davanis v. Davanis*, 132 Wis.2d 318, 392 N.W.2d 108 (1986).

Registration would have conferred subject-matter jurisdiction upon North Dakota, the enforcing state, to modify or enforce that order. NDCC § 14–12.1–40(1); *see In re Marriage of Straeck*, 156 Cal.App.3d 617, 203 Cal.Rptr. 69 (1984); *In re Marriage of Aron*, 224 Cal.App.3d 1086, 274 Cal.Rptr. 357 (1990); *Hartley v. Hartley*, 465 So.2d 592 (Fla.App. 2 Dist.1985); *Hudgins v. Hudgins*, 80 Ohio App.3d 707, 610 N.E.2d 582 (1992); *McGee v. McGee*, 118 N.C.App. 19, 453 S.E.2d 531 (1995); *Hammill v. Cusack*, 118 N.C.App. 82, 453 S.E.2d 539 (1995); *Jaworowski v. Kube*, 276 N.J.Super. 474, 648 A.2d 261 (A.D.1994); *Martin v. Martin*, 127 A.D.2d 266, 514 N.Y.S.2d 413 (1987). As the appellate court of North Carolina aptly explained in *Pinner v. Pinner*, *supra* 234 S.E.2d at 636, registration under RURESA, "changes the status of the foreign support order by allowing it to be treated the same as a support order issued by a court of North Carolina. Once the order is so treated, the obligee or the obligor may request modifications in the order, and when the obligee attempts to enforce the order, the court must determine whether jurisdiction exists over the person or property of the obligor and what amount, if any, is in arrears." *See also Wilson v. Ransom*, 233 Neb. 427, 446 N.W.2d 6 (1989); *Davanis v. Davanis*, 132 Wis.2d 318, 392 N.W.2d 108 (1986); NDCC § 14–12.1–40(1).

However, Tank did not register the Minnesota support order as a foreign support order in McKenzie County. Absent registration of the Minnesota judgment as a foreign support order under RURESA, the judgment could not be modified or enforced in North Dakota.[4] *See Wilson*, 446 N.W.2d at 9; *Hartley*, 465 So.2d at 593–94; *McCutcheon*, 337 N.W.2d at 651; *Martin*, 514 N.Y.S.2d at 417; *Putnam Co. Atty ex rel. Ward v. Ward*, 130 A.D.2d 580, 515 N.Y.S.2d 519 (1987); *Smith v. City of New York*, 118 Misc.2d 227, 459 N.Y.S.2d 1007 (1983). *See also Reliable, Inc.*, 409 N.W.2d at 634 ["in order for subject matter jurisdiction to attach, the particular issue to be determined must be properly brought before the court in the particular proceeding."]. *Cf. Price v. Price*, 17 Va.App.

---

4. Had there been no subsisting support order in this case, Tank could have sought reimbursement from Cordie for the support Tank furnished to LeAnn. NDCC § 14–08.1–01.

105, 435 S.E.2d 652 (1993) [when obligor complied with registration requirements, trial court should have registered foreign support order].

We conclude the district court was without subject-matter jurisdiction to modify or enforce the Minnesota judgment. Accordingly, we vacate the judgment of the district court for McKenzie County.

VANDE WALLE, C.J., and SANDSTROM, J., concur.

MESCHKE, Justice, dissenting.

I agree with much of the majority opinion, but I disagree on several key points. Because I would affirm, I respectfully dissent.

First, I disagree that the trial court modified the 1986 Minnesota judgment for child support. The Minnesota judgment transferred custody of LeAnn from her father to her mother, but that judgment was interlocutory and incomplete on support—"to be determined by future order of the Court." To our knowledge, it was never completed to designate an amount of monetary support in a final order.[5]

While the 1986 Minnesota judgment was in evidence, I see nothing in the findings, conclusions, or order of this trial court that indicates it intended to "modify" the Minnesota judgment. Tank moved "for an order modifying the May 22, 1978, Divorce Judgment and the May 22, 1980, Modified Judgment, entered in the above-entitled action in the Cass County District Court of the First Judicial District of the State of North Dakota," which Tank had first changed to the McKenzie County venue. Rather than modifying the 1986 Minnesota judgment, the trial court addressed and described Cordie's main arguments that, "[b]ecause there was no follow-up order to establish the precise amount [in the Minnesota proceeding] that would

constitute reasonable child support, ... Cordie[ ] takes the position that he was under no obligation to pay, because there was no order saying how much he should pay," and that, "because no [Minnesota] order has been filed from 1986 until after the child is 18 years old, the child has lost out on support and ... the obligor [Cordie] is 'home free.'"

The trial court rejected these arguments about the effect of the incomplete Minnesota support proceeding. Then, the court entered a judgment against Cordie for $19,674 of "accrued but unpaid child support from January 1989 through May 1994," "pursuant to a Motion to Modify Judgment to provide child support for the child, LeAnn Christine Cordie, born February 5, 1976." The judgment was not entered in the Minnesota case with the heading of *Hummel v. Cordie*, but as *Cordie v. Tank*, the heading of the Cass County divorce decree that was transferred to McKenzie County.

The majority says that "the district court for McKenzie County lacked subject-matter jurisdiction to modify or enforce" a Minnesota child support order, and I would agree with that. But I do not agree there was such an order, or that the trial court even tried to do so. The 1986 Minnesota judgment did not "provide[ ] for monetary support." *See* n. 1, ante. Rather, the trial court effectively concluded that an inactive and incomplete Minnesota proceeding did not bar relief in North Dakota.

The majority opinion concludes "the Minnesota court interrupted the trial court's continuing jurisdiction [from the 1978 N.D. divorce decree] in 1986 when it took jurisdiction over LeAnn and rendered judgment establishing continuing jurisdiction in itself." If this were a child custody case, I would agree. But this case is not about custody; it is about child support.

---

5. In the Uniform Interstate Family Support Act (UIFSA), effective August 1, 1995, "'Support order' means a judgment, decree, or order, ... which provides for monetary support...." NDCC 14–12.2–01(21). I believe that definition reflects existing law. *See* NDCC 14–12.2–01(11) ("'Law' includes decisional and statutory law and rules having the force of law."). The minutes of a House Committee session on February 27, 1995, summarize the views of Vonette Richter, an attorney for the legislative council. She indicated the adapted version of UIFSA "completely replaced the current law," did not make "any fundamental changes from the current law," and makes the current law "much more comprehensive and makes the process much more efficient."

The differences between jurisdiction for custody and jurisdiction for support were explained in *Larson v. Dunn*, 474 N.W.2d 34, 39 (N.D.1991):

> Jurisdiction over the marital status and the incidences of a marriage, such as support, involve distinct and separate jurisdictional foundations. Similarly, jurisdiction over the status of child custody and claims for child support involve different jurisdictional foundations.

(Citations omitted). Our analysis in *Larson* examined several precedents that found no jurisdiction for custody, but confirmed jurisdiction for child support, "because that claim was closely analogous to a claim for a debt which required personal jurisdiction over a non-resident for validity." 474 N.W.2d at 40. In each precedent examined, a state's jurisdiction over a support proceeding was upheld because the non-resident parent had either begun the action in that state or "had made a general appearance and subjected himself to the in personam jurisdiction of the court." *Id.*

In *Larson*, too, we concluded that the trial court had lacked subject-matter jurisdiction to change custody of the children from the non-resident mother to the non-resident father, but we also concluded the trial court had had both subject matter jurisdiction over support for the children and personal jurisdiction over the then non-resident mother.

*Id.* at 39–40. The mother had first appeared "without objecting to the court's jurisdiction over her person," and had continuing employment in North Dakota that created "sufficient minimal contacts with North Dakota to confer personal jurisdiction over her." *Id.* at 40. Likewise, in this case, the North Dakota court had subject matter jurisdiction over child support (debt), and it had personal jurisdiction over Cordie, continuing from the divorce decree and from his personal appearance in McKenzie County that failed to object to personal jurisdiction.

Except for the custody aspect not involved here, I do not agree with the majority that "the 1986 Minnesota judgment terminate[d] the continuing jurisdiction of North Dakota courts under the original Cass County divorce decree." There is not a complete Minnesota order fixing monetary support, and support is certainly a continuing aspect of the North Dakota divorce decree. *See* NDCC 14–05–22(1) (authorizing divorce court to "give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper" and to "vacate or modify the same at any time"). Moreover, Tank, as one of LeAnn's parents, has continued to live in this state without interruption, and the child has resided here at the direction of the Minnesota court for more than seven years before this proceeding.[6]

---

6. The UIFSA, effective August 1, 1995, recognizes that "a tribunal of this state may exercise personal jurisdiction over a nonresident individual" in a child support proceeding, "if":

. . . . .

2. The individual submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
3. The individual resided with the child in this state;

. . . . .

5. The child resides in this state as a result of the acts or directives of the individual;
6. The individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse; or
7. There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

NDCC 14–12.2–04. The Comment to UIFSA § 201 describes the effect of this section:

The intent is to insure that every enacting state has a long-arm statute as broad as constitutionally permitted. In situations where the long-arm statute can be satisfied, the petitioner (either the obligor or the obligee) has two options under the Act: (1) utilize the long-arm statute to obtain personal jurisdiction over the respondent; or (2) initiate a two-state action under the succeeding provisions of UIFSA seeking to establish a support order in the respondent's state of residence.

\* \* \*

Under RURESA, multiple support orders affecting the same parties are commonplace. UIFSA creates a structure designed to provide for only one support order at a time. This one order regime is facilitated and combined with a broad assertion of personal jurisdiction under this long-arm provision. The frequency of a two-state procedure involving the participation of tribunals in both states should be substantially reduced by the introduction of this long-arm statute.

9 ULA 243 (Supp.1995).

I agree with the majority's analysis of the mechanics of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), NDCC 14–12.1–01 et seq., but I disagree with the majority's implication that RURESA exclusively governs this state's jurisdiction for child support when the obligor has moved and resides in another state. The RURESA remedies "are in addition to and not in substitution for any other remedies." NDCC 14–12.1–03.[7] In my opinion, the majority fails to recognize the non-exclusive aspect of RURESA in a case like this.

In this appeal, Cordie argued: "The February 13, 1986 Minnesota order and judgment did not set or impose an enforceable child support obligation on Mr. Cordie." Instead, Cordie insisted, since LeAnn had become eighteen, he "no longer had an obligation to provide for her current support" for her, and contended that the trial court had lost jurisdiction for that reason. Cordie argued:

> It is undisputed that LeAnn Cordie turned age eighteen on February 5, 1994 and graduated from high school in May 1994. The motion to modify was brought on June 23, 1994. At that time, Mr. Cordie no longer had an obligation to provide current support to LeAnn Cordie. Thus, current child support was no longer imposable.
>
> . . .
>
> By the time Ms. Tank's motion to modify was brought, LeAnn Cordie was an adult. Mr. Cordie no longer had an obligation to provide for her current support.

We should reject this immaterial argument, as the trial court did, and we should affirm.

This money judgment for child support entered by our trial court does not reach back beyond the statute of limitations, and it enforces the very duty of support that the majority notes in its footnote 4:

7. Similarly, UIFSA, effective August 1, 1995, at NDCC 14–12.2–03, directs:
 Remedies provided by this chapter are cumulative and do not affect the availability of remedies under other law.
 If there had been a subsisting support order, that "provide[d] for monetary support" in Minnesota, I would agree with and join in the majority opinion, because the majority analysis would

Had there been no subsisting support order in this case, Tank could have sought reimbursement from Cordie for the support Tank furnished to LeAnn. NDCC § 14–08.1–01.

I believe the 1986 Minnesota judgment is not a "subsisting court order" for support, because it did not impose a monetary amount of child support on Cordie. Therefore, I believe the trial court was correct in enforcing Cordie's duty of support.

The majority opinion properly recognizes that we need not give full faith and credit to the 1986 Minnesota judgment for child support purposes, but the majority chooses to defer to the Minnesota court for "comity" reasons, that it then describes as jurisdictional. I believe that is mistaken, and that it is unfair to the resident, custodial parent who has cared for and supported this child for the last eight years in this state.

Because I would affirm, I respectfully dissent.

NEUMANN, J., concurs.

then be correct. *See* UIFSA, NDCC 14–12.2–08 on "[c]ontinuing, exclusive jurisdiction." Subsection 2 directs: "A tribunal of this state issuing a child support order consistent with the law of this state may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to a law substantially similar to this chapter."